# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 5, 2009 Session

## IN RE: ESTATE OF MARTHA M. TANNER, deceased

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
No. 05P-1603     Randy Kennedy, Judge

---

**No. M2006-02640-SC-R11-CV - Filed October 7, 2009**

---

The decedent, Martha M. Tanner, died intestate while a resident of a nursing facility. Nineteen months later, the Bureau of TennCare filed a complaint in the Davidson County Chancery Court seeking the appointment of an administrator of her estate. The case was transferred to the probate court, and the decedent's son, Thomas Tanner, was appointed administrator. The Bureau of TennCare then filed a claim seeking recovery of "medical assistance correctly paid" on behalf of the decedent pursuant to Tennessee Code Annotated section 71-5-116 (1995 & Supp. 2002) and 42 United States Code section 1396p (2003 & Supp. 2009). The probate court dismissed the claim as untimely, and, upon direct appeal, the Court of Appeals affirmed. We granted application for permission to appeal in order to consider whether the claim is procedurally barred. Because section 71-5-116 places an obligation on the representative of an estate to obtain a waiver or release from the Bureau, the claim is not subject to a one-year statute of limitations. The judgment of the Court of Appeals is, therefore, reversed, and the cause is remanded to the probate court.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Reversed**

GARY R. WADE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a concurring opinion.

Robert E. Cooper, Jr., Attorney General & Reporter and L. Vincent Williams, Deputy Attorney General, for the appellant, The Tennessee Bureau of TennCare.

Helen Sfikas Rogers and Lawrence James Kamm, Nashville, Tennessee, for the appellee, Thomas Tanner.

## OPINION

**Facts**

On January 14, 2004, Martha M. Tanner died intestate at the age of ninety-six. During the last eleven years of her life, Ms. Tanner, a nursing home resident, received medical benefits from The Tennessee Bureau of TennCare ("Bureau") in the amount of $248,508.77. Ms. Tanner's son and heir at law, Thomas Tanner, had acted as the conservator of her estate during her later years and closed the conservatorship on June 20, 2004, some five months after her death. Ms. Tanner had an estate comprised of $2,000 cash and residential property in Davidson County. The residence, which was assessed at $123,000 for property tax purposes, had an estimated value of $167,000. Although Mr. Tanner did not initiate an administration of the estate after his mother's death, he did file a request for release with the estate recovery unit of the Bureau. After receiving the request, the Bureau responded to Mr. Tanner by letter dated November 18, 2004, which provided in pertinent part as follows:

> The Department of Human Services has informed The Bureau of TennCare that your name was listed as the responsible party for Martha Tanner. Pursuant to State law TCA 71-5-116 and federal law 42 USCA Section 1396p, the State of Tennessee may have a claim for nursing home payments against the estate of Martha Tanner.
>
> Enclosed please find a copy of Frequently Asked Questions About Estate Recovery[,] the release form and instructions for completing the release form. Please complete and return this form by December 8, 2004 to the address above . . . .

(Emphasis added.) When Mr. Tanner neither responded to the letter nor completed and returned the release form as requested, the Bureau filed a claim in the conservatorship action. Days later, on December 20, 2004, the probate clerk rejected the claim because the proceeding had been closed.

Nothing further took place until August 17, 2005, some nineteen months after Ms. Tanner's death and nine months after the initial correspondence, when the Bureau filed a complaint in the Davidson County Chancery Court seeking the appointment of an administrator of her estate. See Tenn. Code Ann. §§ 30-1-301 to -311 (2007 & Supp. 2008). The Bureau claimed that as a creditor of the estate, it was entitled to the appointment of an administrator. Monica Edwards was initially appointed administrator, but in December of 2005, after the case was transferred to a probate court, the probate court determined that the chancery court had not had subject matter jurisdiction; thus, the order appointing Edwards as administrator was set aside.

On January 19, 2006, before the appointment of an administrator by the probate court, Mr. Tanner filed a motion to dismiss, arguing that the Bureau's claim was time-barred by Tennessee Code Annotated section 30-2-310(b) (2007). On March 6, 2006, the probate court entered an order appointing Mr. Tanner as administrator but denying the motion to dismiss. Shortly thereafter, in a separate order, the probate court granted the Bureau's motion to amend its complaint. On July 25, 2006, Mr. Tanner, as administrator, filed another motion to dismiss on the basis that any claim by the Bureau was untimely, having been filed more than twelve months after his mother's death. Three

days later, the Bureau filed a formal claim against Ms. Tanner's estate. The probate court, however, granted the motion to dismiss, holding that the Bureau had only one year from the date of death within which to file its claim. The court observed that a claim for taxes was the only exception to the one-year statute of limitations.

On direct appeal, the Court of Appeals held that the Bureau, which had actual notice of Ms. Tanner's death within twelve months of her passing, had no statutory exemption from the limitations period as set out in Tennessee Code Annotated sections 30-2-307(a)(1) and 30-2-310(b). In its application for permission to appeal the ruling, the Bureau presented several arguments that the claim was not barred: firstly, that the period of limitations began only when (a) there was a personal representative capable of being sued and (b) there was a creditor with the present right to sue; secondly, that the Bureau was not subject to the one-year statute of limitations because it is not a "creditor" as defined by statute; thirdly, that the statutory limitation period was superseded by the terms of section 71-5-116; and, fourthly, that the proceedings below constituted an "insolvency" proceeding that is excepted from timeliness requirements by Tennessee Code Annotated section 30-2-501. Because of conflicting opinions by the Court of Appeals as to the applicability of the one-year statute of limitations to Bureau claims, we granted the Rule 11 application to consider the issues presented.

**Standard of Review and Statutory Interpretation**

The issues presented by this appeal involve the interpretation of state statutes. Statutory construction is a question of law that is reviewable on a de novo basis without any presumption of correctness. Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 802 (Tenn. 2000); Myint v. Allstate Ins. Co., 970 S.W.2d 920, 924 (Tenn. 1998). When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. Abels ex rel. Hunt v. Genie Indus., Inc., 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." Marsh v. Henderson, 424 S.W.2d 193, 196 (Tenn. 1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. Tenn. Elec. Power Co. v. City of Chattanooga, 114 S.W.2d 441, 444 (Tenn. 1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995).

**History**

In 1965, the federal government established the Medicaid program as a means of providing health coverage for low-income Americans through the use of both federal and state appropriations. See 42 U.S.C. § 1396. At that time, the federal government contributed two dollars for every dollar expended by the State of Tennessee. State ex rel. Pope v. Xantus Healthplan of Tenn., Inc., No. M2000-00120-COA-R10-CV, 2000 WL 630858, at *1 (Tenn. Ct. App. May 17, 2000). During the period after the inception of the federal program, the states expanded Medicaid services by offering more of their own tax dollars as a means of increasing the federal contribution. See James F. Blumstein & Frank A. Sloane, Health Care Reform Through Medicaid Managed Care: Tennessee (TennCare) as a Case Study and a Paradigm, 53 Vand. L. Rev. 125, 140 (2000). In order to bolster the effectiveness of Medicaid programs while constraining costs, states adopted various procedures for controlling or recouping costs associated with the program. See Jonathan Engel, Poor People's Medicine: Medicaid and American Charity Care Since 1965, at 62 (2006) (observing that "[a]s predicted, the early state [Medicaid] programs began to run over budget within two years of their start" and describing early efforts in California and New York to deal with cost overruns). As one such cost-control mechanism, the Tennessee Medical Assistance Act of 1968 authorized "adjustment or recovery" from the estates of deceased Medicaid recipients who had been sixty-five years or older at the time they received "correctly paid" benefits. 1968 Tenn. Pub. Acts 496, 502-03; see West Virginia v. Dep't of Health & Human Servs., 289 F.3d 281, 284 (4th Cir. 2002) ("Before 1993, the Medicaid Act permitted [but did not require] states, under certain circumstances, to recover medical costs paid by Medicaid from the beneficiary's estate."). The provision, however, did not affirmatively require the State of Tennessee to seek recovery.

As the services provided by the federal government grew and the cost of medical services increased, this state's responsibilities also escalated, from less than $1 billion dollars in 1987 to over $2.8 billion in 1993. Blumstein & Sloane, 53 Vand. L. Rev. at 150. As a part of the Omnibus Budget Reconciliation Act of 1993, the United States Congress enacted legislation requiring the states to recover costs from the estates of certain Medicaid beneficiaries. Pub. L. No. 103-66, 107 Stat. 312 (codified as amended 42 U.S.C. § 1396p(b)(1)(B) (2003 & Supp. 2009)); see West Virginia v. Thompson, 475 F.3d 204, 207 (4th Cir. 2007); West Virginia v. Dep't of Health & Human Servs., 289 F.3d at 284-85. The program affirmatively obligates the states to recover "medical assistance correctly paid" to help offset the cost of medical care. 42 U.S.C. § 1396a(a)(18). 42 United States Code section 1396p(b) describes in detail the situations in which a state must seek recovery.

On January 1, 1994, TennCare established a managed care model designed to gain a measure of control over the costs associated with Medicaid, moving more than 800,000 Medicaid recipients into a state program. Later, as a part of the TennCare Reform Act of 2002, our General Assembly enacted legislation reaffirming the State's authority to recover "medical assistance correctly paid" from estates under the state plan and expanding on the existing procedural framework for recovery of correctly paid medical assistance. 2002 Tenn. Pub. Acts 2422, 2425-26 (codified as amended at Tenn. Code Ann. § 71-5-116(c) (1995 & Supp. 2002)); see also 42 U.S.C. § 1396p(b). At the time of Ms. Tanner's death, the statute provided as follows:

(c) There shall be no adjustment or recovery of any payment for medical assistance correctly paid on behalf of any individual under this part, except in the case of an individual who was fifty-five (55) years of age or older when such individual received such medical assistance or services, from such individual's estate, and then only after the death of such individual's surviving spouse, if any, and only at a time when such individual has no surviving child who is under eighteen (18) years of age or who is blind or permanently and totally disabled.

(1) To facilitate and enhance compliance with this subsection (c), the department of health shall promptly notify the bureau of TennCare, in a format to be specified by the bureau, of the death of any individual fifty-five (55) years of age or older. Such notification shall include the decedent's name, date of birth, and social security number. It is the legislative intent of this subsection (c) that the bureau of TennCare strive vigorously to recoup any TennCare funds expended for a decedent after the date of death.

(2) Before any probate estate may be closed pursuant to title 30, with respect to a decedent who, at the time of death, was enrolled in the TennCare program, the personal representative of the estate shall file with the clerk of the court exercising probate jurisdiction a release from the bureau of TennCare evidencing payment of all medical assistance benefits, premiums, or other such costs due from the estate under law, unless waived by the bureau.[1]

Tenn. Code Ann. § 71-5-116(c) (emphasis added). After her death, the estate of Ms. Tanner qualified as one from which recovery could be sought under this statute.

In 2006, the General Assembly enacted a significant amendment to Tennessee Code Annotated section 71-5-116(d)(1)(D), adding two new subsections to explicitly address the relationship between that section's requirements and the title 30 claim-filing process.[2] Although that

---

[1] Tennessee Code Annotated section 71-5-116(c) was amended on January 1, 2007, after the death of Ms. Tanner.

[2] The new subsections, which contain both new provisions and provisions that had existed in section 71-5-116(c), read, in full:

(d)(1) To facilitate and enhance compliance with subsection (c), the following notices shall be provided:

(A) Within thirty (30) days of receipt of notice of a person's death, the department of health shall notify the bureau of TennCare, in a format to be specified by the bureau, of the death of any individual fifty-five (55) years of age or older. Each notification shall include the decedent's name, date of birth and social security number;

(continued...)

-5-

amendment became effective on January 1, 2007, and, therefore, is not applicable to the proceedings below, its content provides helpful context for the purposes of this case. The amendment first requires the personal representative of a decedent who received TennCare to provide notice to the Bureau. Then, "[i]f a notice to creditors is provided to the bureau, the bureau shall file a claim for recovery in accordance with the requirements of title 30, chapter 2, part 3." Tenn. Code Ann. § 71-5-116(d)(1)(D) (Supp. 2008).

## Analysis

Although the Bureau submits a variety of questions for review, the essential issue is whether the claim by the Bureau against the Tanner estate was timely filed. Recently, panels of our Court of Appeals reached different results on claims by the Bureau for "medical assistance correctly paid," even though the circumstances in each instance were practically identical.[3] Our consideration of this

---

[2](...continued)

> (B) Within sixty (60) days of the date of issuance of either letters of administration or letters testamentary, the personal representatives of decedents shall provide notice of the death of any individual age fifty-five (55) years of age or older to the bureau of TennCare, in a format to be specified by the bureau, shall state whether the decedent was a TennCare recipient and shall request a release from the bureau of TennCare pursuant to subdivision (c)(2), and an affidavit confirming notice shall be filed pursuant to § 30-2-301(b)(3);

> (C) Personal representatives of decedents shall provide notice to the court concerning whether or not the decedent was a TennCare recipient pursuant to § 30-1-117; and

> (D) Personal representatives of decedents shall provide the notice to creditors specified in § 30-2-306 to the bureau of TennCare, if the decedent was a TennCare recipient. If a notice to creditors is provided to the bureau, the bureau shall file a claim for recovery in accordance with the requirements of title 30, chapter 2, part 3.

(2) It is the legislative intent of subdivision (d)(1) that, after the date of death, the bureau of TennCare strive vigorously to recoup any TennCare funds expended for a decedent during the decedent's lifetime.

(e) The bureau of TennCare shall publish a form of notice to be used pursuant to subdivisions (d)(1)(A) and (B), with instructions for use of the form written in plain language. The form and instructions shall be available at the office of any clerk of court exercising probate jurisdiction, as well as available on the bureau's web site. Notice shall be provided via certified mail or in any other manner designated by the bureau.

[3] In two cases, In re Estate of Henkel, No. M2006-02641-COA-R3-CV, 2007 WL 4117791 (Tenn. Ct. App. Nov. 16, 2007), and In re Estate of Anderson, No. M2006-02303-COA-R3-CV, 2007 WL 4116223 (Tenn. Ct. App. Nov. 16, 2007), the Court of Appeals concluded that Tennessee Code Annotated section 30-2-310(b), which specifically applies to the state, provided a one-year limitations provision for any effort by the TennCare Bureau to recover correctly paid benefits under Tennessee Code Annotated section 71-5-116(c). There was no application for permission to appeal in either case. In In re Estate of Hare, No. M2007-00563-COA-R3-CV, 2007 WL 4459934 (Tenn. Ct. App. Dec. 19, 2007) (Tenn. R. App. P. 11 application pending), the Court of Appeals again concluded that any claim by TennCare filed more than one year after the date of death was barred by the statute of limitations. In In re Estate of Roberts, M2006-01950-COA-R3-CV, 2008 WL 2415520, at *4 (Tenn. Ct. App. June 11, 2008) (Tenn. R. App. P. 11 application
(continued...)

question reveals the unfortunate tension between two important policy considerations. On one hand, the procedural restrictions that require the timely filing of claims against an estate are designed to encourage "the orderly, expeditious, and exact settlement of estates of decedents." Alamo Dev. Corp. v. Thomas, 212 S.W.2d 606, 607 (Tenn. 1948). On the other hand, however, the statutory mechanisms for control and recoupment of TennCare's costs serve the purposes of efficiency and fiscal responsibility. As in any statutory case, it is not our duty to re-weigh these competing concerns. Rather, we look to the statutes themselves and, if necessary, their context to determine the balance that was struck by the General Assembly.

Our analysis begins with the three statutes which govern the claims of creditors against a decedent's estate: Tennessee Code Annotated sections 30-2-306, 30-2-307, and 30-2-310.[4] Parenthetically, a ten-year statute of limitations found in Tennessee Code Annotated section 28-3-110(3) (2000) applies to any cause of action for which there is no specific limitation period. The first of the three statutes pertaining to claims of this nature, Tennessee Code Annotated section 30-2-306 (2007 & Supp. 2008), establishes the duties of the court in which an estate is being administered and the representative of the estate to provide, respectively, public and direct notice to creditors. Pursuant to Tennessee Code Annotated section 30-2-306(a) through (c), the clerk of the court must publish a series of public notices within thirty days after the issuance of testamentary or administrative letters. The prescribed notice includes a requirement that

> [a]ll persons . . . having claims, matured or unmatured, against the estate are required to file the same . . . within the earlier of four (4) months from the date of the first publication (or posting, as the case may be) of this notice or twelve (12) months from the decedent's date of death, otherwise their claims will be forever barred.

Tenn. Code Ann. § 30-2-306(b) (emphasis added). Under section 30-2-306(d), the representative has a duty "to mail or deliver by other means a copy of the [public notice] to all creditors of the decedent of whom the personal representative has actual knowledge or who are reasonably

---

[3](...continued)

pending), however, a different section of the Court of Appeals interpreted Tennessee Code Annotated section 71-5-116(c)(2) as imposing upon personal representatives a duty to reimburse the Bureau of TennCare whether or not a claim is filed against the estate:

> Consequently, since the personal representative is obligated to show the probate court that any interest of TennCare has been addressed before the estate may be closed, regardless of whether a claim has been filed in the probate proceeding, reimbursement is clearly an obligation of the personal representative that exists whether or not TennCare has filed a claim.

Because the obligation was that of the personal representative and because there was no requirement that a claim be filed, the Court of Appeals held that the code sections establishing statutes of limitations for claims against an estate were not applicable. Id.

[4] The latter two of these statutes have been traditionally referred to as "nonclaim statutes." See Bowden v. Ward, 27 S.W.3d 913, 918 (Tenn. 2000).

ascertainable by the personal representative, at the creditors' last known addresses." If a creditor's identity is known or reasonably ascertainable, a termination of the creditor's claim without "actual notice" may violate due process. Tulsa Prof'l Collection Servs. Inc. v. Pope, 485 U.S. 478, 484 (1988); Bowden, 27 S.W.3d at 916 n.3. Pursuant to Tennessee Code Annotated section 30-2-306(e), however, the public notice requirement "shall not apply if the letters testamentary or of administration are issued more than one (1) year from the decedent's date of death."

The second statute pertinent to our analysis is Tennessee Code Annotated section 30-2-307 (2007),[5] which establishes time limitations on the filing of claims. If a creditor receives actual notice

---

[5] The full text of the statute is as follows:

(a)(1) All claims against the estate arising from a debt of the decedent shall be barred unless filed within the period prescribed in the notice published or posted in accordance with § 30-2-306(b). However:

> (A) If a creditor receives actual notice less than sixty (60) days before the expiration of the period prescribed in § 30-2-306(b) or after the expiration of the period prescribed in § 30-2-306(b) and more than sixty (60) days before the date that is twelve (12) months from the decedent's date of death, the creditor's claim shall be barred unless filed within sixty (60) days from the date of receipt of actual notice; or

> (B) If a creditor receives actual notice less than sixty (60) days before the date that is twelve (12) months from the decedent's date of death or receives no notice, the creditor's claim shall be barred unless filed within twelve (12) months from the decedent's date of death.

(2) After the expiration of the period prescribed in § 30-2-306(b), but before the date that is twelve (12) months from the decedent's date of death, the court may permit the personal representative to distribute the balance of the estate in accordance with § 30-2-701, make final settlement and enter an order discharging the personal representative. If a creditor files its claim after the estate is closed as permitted in the preceding sentence and before the date that is twelve (12) months from the decedent's date of death, the personal representative shall not be personally liable to the creditor whose recourse will be against the distributees of the estate, each of whom shall share liability on the claim in proportion to the claimant's share of the residue. The burden of proof on any issue as to whether a creditor was known to or reasonably ascertainable by the personal representative, or as to whether actual notice was properly sent in accordance with § 30-2-306, shall be upon the creditor claiming entitlement to actual notice. In such cases, the distributees of the estate shall be personally liable on a pro rata basis if the court finds the claim is proper and the creditor did not receive the appropriate notice.

(b) When any claim is evidenced by a written instrument, the instrument or a photocopy of the instrument shall be filed; when due by a judgment or decree, a copy of the judgment or decree certified by the clerk of the court where rendered shall be filed; and when due by open account, an itemized statement of the account shall be filed; and every claim shall be verified by affidavit of the creditor before an officer authorized to administer oaths, which affidavit shall state that the claim is a correct, just and valid obligation of the estate of the decedent, that neither the claimant nor any other person on the claimant's behalf has received payment of the claim, in whole or in part, except such as is credited thereon, and that no security for the claim has been received, except as thereon stated.

(c) No claim shall be filed by the clerk nor deemed to be filed unless submitted in triplicate, but the

(continued...)

-8-

sixty or more days before the close of the four-month period listed in the notice, the creditor must file within that four-month period. Tenn. Code Ann. § 30-2-307(a)(1); see Bowden, 27 S.W.3d at 918 (discussing application of the six-month period of limitations which appeared in earlier version of the statute). Section 30-2-307(a)(1) extends the period for creditors who do not receive timely notice, but caps the period at one year:

> (A) If a creditor receives actual notice less than sixty (60) days before the expiration of the period prescribed in § 30-2-306(b) or after the expiration of the period prescribed in § 30-2-306(b) and more than sixty (60) days before the date that is twelve (12) months from the decedent's date of death, the creditor's claim shall be barred unless filed within sixty (60) days from the date of receipt of actual notice; or
>
> (B) If a creditor receives actual notice less than sixty (60) days before the date that is twelve (12) months from the decedent's date of death or receives no notice, the creditor's claim shall be barred unless filed within twelve (12) months from the decedent's date of death.

Section 30-2-307(a)(1)(B) provides "for an absolute one-year limit on the filing of claims against the estate, and this limitations period applies whether the creditor has received proper notice or no notice at all. Thus, [the creditor's] claim [i]s required to be filed within a year of [the decedent's] death." In re Estate of Jenkins v. Guyton, 912 S.W.2d 134, 138 n.3 (Tenn. 1995).

A third statutory provision, Tennessee Code Annotated section 30-2-310 (2007), reiterates the one-year limitation and explicitly addresses claims made by the State of Tennessee against an estate:

---

[5](...continued)
second and third copies need not be verified.

(d) The clerk shall file all claims received not later than twelve (12) months from the decedent's date of death. However, filing of claims by the clerk shall not create an inference as to whether the claims are valid or were timely filed. The clerk shall return any claim submitted before the appointment of a personal representative or received more than twelve (12) months from the decedent's date of death.

(e)(1) A creditor who has timely filed a claim against the estate shall file any amendment to its claim no later than thirty (30) days from the later of:

    (A) The date an exception to the claim is filed; or

    (B) The expiration of the exception period.

(2) Unless the court with jurisdiction over the probate of the decedent's estate grants an extension of time for amendment on the creditor's showing of extraordinary circumstances, any amendment filed after the time prescribed shall be void.

(a) All claims and demands not filed with the probate court clerk, as required by §§ 30-2-306 – 30-2-309, or, if later, in which suit has not been brought or revived before the end of twelve (12) months from the date of death of the decedent, shall be forever barred.

(b) Notwithstanding subsection (a), all claims and demands not filed by the state with the probate court clerk, as required by §§ 30-2-306 – 30-2-309, or, if later, in which suit has not been brought or revived before the end of twelve (12) months from the date of death of the decedent, shall be forever barred. This statute of limitations shall not apply to claims for state taxes. Claims for state taxes shall continue to be governed by § 67-1-1501.

Tenn. Code Ann. § 30-2-310 (emphasis added).

### 1. Tolling Absent Estate Administration

As a preliminary matter, the Bureau argues that the time limitations imposed by section 30-2-310, the statute governing claims by the state, are tolled as to claims against estates during the period of delay between the death of the decedent and the appointment of an administrator. This Court has not specifically addressed this issue, and there has been some disagreement among the sections of our Court of Appeals. Compare Estate of Divinny v. Wheeler Bonding Co., No. M1999-00678-COA-R3-CV, 2000 WL 337584, at *3 (Tenn. Ct. App. Mar. 31, 2000) (holding that claim was not subject to one-year bar where estate was not probated until after year had elapsed from date of death), perm. app. denied (Tenn. Dec. 4, 2000), with In re Estate of Luck, No. W2004-01554-COA-R3-CV, 2005 WL 1356448, at *7 (Tenn. Ct. App. June 7, 2005) ("While we recognize the probate court's duty to follow the precedents set forth by this Court, our decision in Estate of Divinny and its progeny have misconstrued the statute of limitations applicable to a creditor's claim against an estate. The exception found in section 30-2-307(a)(1)(B) of the Tennessee Code expressly and unambiguously states that a 'creditor's claim shall be barred unless filed within twelve (12) months from the decedent's date of death.'" (citation omitted)). In our view, the decision in Luck, wherein the Court of Appeals held that the limitation applies regardless of whether a representative was appointed, is the most natural interpretation of the statutory scheme. See also Jack W. Robinson, Sr. et al., 2 Pritchard on Wills and Administration of Estates § 802 (6th ed. 2007) ("The maximum time in any event for filing a claim is twelve months from the decedent's death."). First, the plain language of section 30-2-310(b) provides that the limitations period begins "from the date of death of the decedent," with no mention of the date on which a representative is appointed. Similarly, section 30-2-307(a)(1)(B) imposes a one-year limitations period beginning on "the decedent's date of death," even if a creditor "receives no notice." Further, due to a recent amendment, section 30-2-307(d) now provides that "[t]he clerk shall file all claims received not later than twelve (12) months from the decedent's date of death," but "shall return any claim . . . received more than twelve (12) months from the decedent's date of death." Each of these provisions supports the proposition that the one-year limitations period begins on the date of death, regardless

of whether an administrator has been appointed.[6] As the Court of Appeals observed in Luck, that is the only logical interpretation in light of section 30-2-306(e) (then section 30-2-606(f)), which establishes that the notice requirements of section 30-2-306(a) do not apply "if the letters testamentary or of administration are issued more than one (1) year from the decedent's date of death." In our view, there would be no reason to eliminate the notice requirement after one year if claims were not also barred after that period of time. See Luck, 2005 WL 1356448, at *8. Finally, we have reviewed the legislative history of section 30-2-310(b), particularly the proceedings in the General Assembly associated with its original enactment, and we have concluded that the limited context available supports our conclusion that the one-year bar begins at the date of death and is not conditioned upon the appointment of an administrator.[7]

In summary, the plain language of section 30-2-310(b) establishes that the one-year limitation period begins on the date of death, regardless of whether a representative has been appointed.[8] Moreover, the legislative history supports an identical interpretation.

## 2. The Bureau as a Creditor

As an alternative to the claim of tolling absent estate administration, the Bureau argues that the limitations of 30-2-310 do not apply because the Bureau is not a "creditor." We disagree. The plain language of sections 30-2-306 to 30-2-310 applies to all claims or demands, unless excepted, and the Bureau's right to recover fits the meaning of "claim or demand" in the context of the statutory scheme.[9]

---

[6] Some prior versions of the statute of limitations for claims against estates began on the date of notice to creditors, without an additional bar calculated from the date of death. E.g., Tenn. Code Ann. § 30-513 (1955); Tenn. Code Supp. § 8196.4 (1950). If the General Assembly wished to explicitly define the one-year limitations period in reference to the date of notice or the date of a representative's appointment, it could easily do so with similar explicit language.

[7] As such, cases that understandably relied on Estate of Divinny are overruled insofar as they suggest that the one-year limitations period does not run from the date of death.

[8] The Bureau has argued, however, that the inclusion of the phrase "or, if later" in sections 30-2-310(a) and (b) somehow requires a different interpretation. We disagree. Although the language is somewhat ambiguous as to what "or, if later" modifies, both the statutory scheme as a whole and the legislative history lend credence to the notion that the date of death initiates the limitation period.

[9] The Bureau relies on several cases for the proposition that the limitations of section 30-2-306 to 30-2-310 apply only to "creditors," which it defines as parties seeking payment of obligations arising out of contracts. See Estate of Russell v. Snow, 829 S.W.2d 136 (Tenn. 1992); In re Estate of Darwin, 503 S.W.2d 511, 513 (Tenn. 1973); In re Estate of Thompson, 314 S.W.2d 6, 8 (Tenn. 1958); Collins v. Ruffner, 206 S.W.2d 298, 300 (Tenn. 1947); Gillespie v. Broadway Nat'l Bank, 68 S.W.2d 479, 481 (Tenn. 1934); Williams v. Conrad, 30 Tenn. (11 Hum.) 412, 418 (1850). We disagree with the Bureau's interpretation. No such rule appears in either of the two most recent of these cases. Estate of Russell is concerned only with the ability of an individual with a tort claim against a decedent to appoint an administrator ad litem. 829 S.W.2d at 137-38. Estate of Darwin was decided before section 30-2-310(b) extended the general limitations periods for estate claims to claims filed by the state, and thus considered only whether the statute of limitations for tax claims in Tennessee Code Annotated section 67-1323 applied to a particular state claim. 503 S.W.2d

(continued...)

Although some of the cases addressing earlier statutes include language that supports the Bureau's interpretation, see, e.g., In re Estate of Thompson, 314 S.W.2d at 8, the plain language of title 30 irrefutably establishes that a "claim" is not restricted to obligations arising out of contracts. For example, section 30-2-310(b) creates a specific exception for "claims for state taxes." Of course, there would be no need for such an exception if "claim" extended only to a contractual cause of action. Section 30-2-316, which sets forth the priority of claims against an estate, also contemplates "claims or demands" other than those arising out of contracts. At the time of Ms. Tanner's death, the statute included "[t]axes and assessments imposed by the federal or any state government or subdivision thereof" in its listing of "claims or demands." Tenn. Code Ann. § 30-2-317(a)(3) (2001). Since then, the statute has been amended to more explicitly include "claims by the Bureau of TennCare pursuant to § 71-5-116." Tenn. Code Ann. § 30-2-317(a)(3) (2007). Similarly, section 30-2-307(b) contemplates claims arising from means other than contracts, including those "due by a judgment or decree." Tenn. Code Ann. § 30-2-307(b) (2001).

The Bureau argues, in the alternative, that sections 30-2-306 to 30-2-310 apply only to debts or demands that would have been enforceable against the decedent during her life, rather than claims, such as the Bureau's, that arose at the time of her death. Nothing in the text of the statutes, however, supports such an interpretation. Although the Bureau cites Gillespie, 68 S.W.2d at 481, as support for its argument, that case was decided under statutory provisions, since superseded, which distinguished between "cause[s] of action accrued in the lifetime of the deceased" and those that did not accrue until later.[10] Id. at 480. Because the current statutory scheme governs all claims and demands and does not make such a distinction, Gillespie does not apply. We thus conclude that, pursuant to the plain language of Tennessee Code Annotated sections 30-2-307 to 30-2-310, the Bureau's right of recovery constituted a claim or demand subject to the statute of limitations.

### 3. Section 71-5-116 "Belt and Suspenders"

The Bureau contends that even if the one-year limitation period would otherwise be applicable, Tennessee Code Annotated section 71-5-116, as it existed at the time of Ms. Tanner's death, established an exception for the recovery of correctly paid TennCare claims to the general statute of limitations pertaining to estate claims. We agree.

Federal law places an obligation on the Bureau to pursue recovery of certain correctly paid medical assistance:

---

[9](...continued)
at 513.

[10] The Bureau points to a statement of the Court to the effect that when these earlier provisions were superseded by the statutes from which the present statutes more directly evolved, the change was only to procedure, rather than to substantive rights. See Collins, 206 S.W.2d at 300. Even if correct, that pronouncement is of no import. The statute of limitations is a procedural bar, and thus it is entirely consistent to conclude that a change in which claims were covered by the statute of limitations was a procedural change.

(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State <u>shall seek adjustment or recovery</u> of any medical assistance correctly paid on behalf of an individual under the State plan . . .

. . .

(B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State <u>shall seek adjustment or recovery</u> from the individual's estate, but only for medical assistance consisting of—

> (i) nursing facility services, home and community-based services, and related hospital and prescription drug services, or

> (ii) at the option of the State, any items or services under the State plan.

42 U.S.C. § 1396p (b)(1) (emphasis added). The 1993 federal legislation, of course, does not require that the Bureau guarantee "adjustment or recovery" in all cases, nor does it require that the state exempt the Bureau from procedural requirements that might result in the forfeiture of the claim. Section 1396p(b)(1) simply imposes an obligation on the Bureau to "seek adjustment or recovery."[11]

The Bureau, however, argues that Tennessee Code Annotated section 71-5-116(c)(2), which places a duty on a decedent's personal representative – in this case, Mr. Tanner[12] – to apply for a release or seek a waiver of benefits, establishes, by implication, an exception to the statute of

---

[11] It has been said that "legislation enacted pursuant to the [federal] spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 451 U.S. 1, 17 (1981). The power to impose such conditions, though not unlimited, is broad. <u>See</u> Samuel R. Bagenstos, <u>Spending Clause Litigation in the Roberts Court</u>, 58 Duke L.J. 345, 356-84 (2008) (discussing pitfalls of existing and proposed constitutional limits on the federal power to impose conditions on shared funds and predicting that the United States Supreme Court will be unlikely to aggressively impose restrictions); Ernest A. Young, <u>The Rehnquist Court's Two Federalisms</u>, 83 Tex. L. Rev. 1, 141 (2004) ("Even as the Rehnquist Court has sought to revive other doctrinal limits on Congress, its leading Spending Clause precedent, <u>South Dakota v. Dole</u>, [483 U.S. 203 (1987),] stands as a landmark of permissiveness and deference."). This case does not, however, present us with the opportunity to consider if or when dilatory recovery practices of the Bureau might violate its obligations to the federal government pursuant to section 1396p(b)(1). Our present duty is only to construe the relevant statutes, and section 1396p(b)(1) does not require the General Assembly to exempt the Bureau from ordinary procedural requirements in its efforts to recover benefits.

[12] "'Personal representative,' when applied to those who represent a decedent, includes executors and administrators, unless the context implies heirs and distributees." Tenn. Code Ann. § 1-3-105(22) (Supp. 2008). We note that, although formal probate proceedings were eventually opened for Ms. Tanner's estate, many estates are not probated at all. <u>See</u> John H. Langbein, <u>The Nonprobative Revolution and the Future of the Law of Succession</u>, 97 Harv. L Rev 1108, 1108 (1984). When an estate is not expeditiously moved into probate, claimants such as the Bureau have the option to seek the appointment of an administrator, as the Bureau did here. <u>See</u> Tenn. Code Ann. §§ 30-1-106, -301, -302, -303 (2007).

limitations set out in section 30-2-310. At the time of Ms. Tanner's death, section 71-5-116(c)(2) provided that

> [b]efore any probate estate [of a TennCare recipient] may be closed . . . , the personal representative of the estate shall file with the clerk of the court exercising probate jurisdiction a release from the bureau of TennCare evidencing payment of all medical assistance benefits, premiums, or other such costs due from the estate under law, unless waived by the bureau.

(Emphasis added.) In In re Estate of Roberts, the Court of Appeals concluded that this provision, combined with TennCare's authority to file a claim against an estate, set forth a "'belt and suspenders' approach" to recovery of correctly paid benefits; in other words, the General Assembly placed responsibility on both parties – the Bureau as well as the decedent's personal representative – to assure that recoverable benefits are repaid. 2008 WL 2415520, at *4. This approach, according to the Court of Appeals in Roberts, precludes the application of the statute of limitations in section 30-2-310:

> The Bureau is to pursue the claim, and the personal representative is likewise obligated to determine if reimbursement to the TennCare Bureau is appropriate. Clearly, the legislature was attempting to place responsibility for recoupment of these payments on all involved parties.

> Consequently, since the personal representative is obligated to show the probate court that any interest of TennCare has been addressed before the estate may be closed, regardless of whether a claim has been filed in the probate proceeding, reimbursement is clearly an obligation of the personal representative that exists whether or not TennCare has filed a claim. Since it is an obligation of the personal representative, and there is no requirement that a claim be filed, the code sections establishing statutes of limitations for claims against an estate are not applicable.

Id. at *4 (emphasis added). In other words, because section 71-5-116(c)(2) imposes an ongoing responsibility to pay the debt, and that responsibility cannot be discharged without a waiver or release even after a year has elapsed, the section 30-2-310(b) bar is tolled until a release or waiver is obtained.

Mr. Tanner offers an alternative reading of section 71-5-116(c)(2). He submits that the waiver and release provisions of the section apply only to medical benefits "due from the estate under law," and, because, according to his interpretation, the limitations period in section 30-2-310(b) barred the Bureau's claim, the benefits were no longer due. Thus, when the one-year period came to an end, the Bureau no longer had any basis to impede the closure of the Tanner estate.

In order to determine which of these two competing interpretations controls, we must conduct a careful analysis of the texts of sections 71-5-116(c)(2) and 30-2-310. As always, the "first step in

interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). Because "statutes 'relating to the same subject or having a common purpose' . . . should be construed together," Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ., 244 S.W.3d 302, 309 (Tenn. 2007) (quoting Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn. 1994)), we must determine whether the content of sections 71-5-116 and 30-2-310 leave any ambiguity regarding the Bureau's right to recover against Ms. Tanner's estate absent the filing of a claim within twelve months of her death. For the reasons below, we have concluded that the plain meaning of the statutes is ambiguous, and we must, therefore, resort to the traditional tools of construction.

"[A] release . . . evidencing payment of all medical assistance benefits, premiums, or other such costs due from the estate under law" is required by section 71-5-116. If this terminology does not require a release evidencing payment of Ms. Tanner's correctly paid medical assistance, then the Court of Appeals' "belt and suspenders" rationale in Roberts must fail. If, however, Mr. Tanner had a continuing obligation to secure a release evidencing payment of the correctly paid medical assistance, then the Bureau may be right that it was implicitly excepted from the limitation period.

As a preliminary observation, there is a lack of clarity as to whether the phrase "due from the estate under law" in section 71-5-116 applies only to "other such costs," or whether it also applies to "medical assistance benefits" and "premiums." It is a general maxim of statutory interpretation that under "the 'rule of the last antecedent,' . . . 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" United States v. Hayes, 129 S.Ct. 1079, 1086 (2009) (quoting Barnhart v. Thomas, 540 U.S. 20, 26 (2003)). Under that rule, "due from the state under law" would modify only "other such costs." Strictly applied, this principle would serve as a significant obstacle for Mr. Tanner's argument. "The rule of the last antecedent, however, 'is not an absolute and can assuredly be overcome by other indicia of meaning.'"[13] Id.

---

[13] In his seminal The Language of Judges 29-38 (1993), linguist and legal academic Lawrence M. Solan considered a series of California cases that applied the last antecedent rule to reach questionable results and concluded:

> The problem with the cases that I have discussed . . . is not the last antecedent rule itself. Rather, it is the courts' presentation of the last antecedent rule as a hard and fast rule of law, instead of as a preliminary strategy for helping a judge to interpret a statute . . . appropriately in the context of the dispute that he must resolve.

This problem, as Solan correctly noted, is not unique to the last antecedent rule. Any canon of statutory construction, if applied mechanically and without attention to context, may lead to an incorrect result. After all, legislatures are typically not writing with judicial canons in mind. See William N. Eskridge, Jr., Dynamic Statutory Interpretation 231 (1994) ("Judge Abner Mikva, a former member of the House of Representatives, says: 'When I was in Congress, the only "canons" we talked about were the ones the Pentagon bought that could not shoot straight.'"). Thus, canons of construction, though helpful, should always be tested against the other interpretive tools at a court's disposal. See Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 26-28 (1997) (responding to Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed, 3 Vand. L. Rev. 395, 401-06 (1950)); James J. Brudney & Corey Ditslear, Canons of Construction and the Elusive Quest for Neutral Reasoning, 58 Vand. L. Rev. 1, 112 (2005) ("In the end, the canons are only one of many interpretive tools
(continued...)

(quoting Barnhart, 540 U.S. at 26). Moreover, it might qualify as absurd to require the filing of a "release . . . evidencing payment of . . . medical assistance benefits" or "premiums" that are not due.[14] Thus, even if the phrase "due from the estate under law" were omitted completely from the statute, the only plausible reading would be that it implicitly referred to medical assistance benefits that are due, premiums that are due and other such costs that are due. Otherwise, there would be no reason for a release. Under these circumstances, we are convinced that the General Assembly intended section 71-5-116(c)(2)(A), as it read at the time of Ms. Tanner's death, to refer to payment of all premiums and medical assistance benefits "due . . . under law," either implicitly or because the last antecedent rule does not apply.

Whether the medical benefits correctly paid to Ms. Tanner before her death were "due from the estate under law," even after the one-year period of limitation for claims against an estate, is another question. Mr. Tanner contends that they were not, because any claim that the Bureau could have made was subject to the timeliness requirements of section 30-2-310(b). In response, the Bureau contends that section 30-2-310(b) establishes only a procedural bar to certain remedies and, if applied to the Bureau, would not serve to extinguish the estate's underlying obligation to the Bureau and thus would not eliminate the representative's duty to receive a waiver or release.

One consideration is whether the statutes create a statute of limitations or of repose. Several of our cases have recognized the distinction between statutes of limitations and statutes of repose. As relevant to this case, we have stated that "[s]tatutes of repose are substantive and extinguish both the right and the remedy while statutes of limitations are procedural, extinguishing only the remedy." Calaway ex rel. Calaway v. Schucker, 193 S.W.3d 509, 515 (Tenn. 2005) (quoting Jones v. Methodist Healthcare, 83 S.W.3d 739, 743 (Tenn. Ct. App. 2001)). Section 30-2-310(b) explicitly refers to the one-year requirement as a "statute of limitations." In Woods v. Palmer, 496 S.W.2d 474, 476 (Tenn. 1973), we held that predecessor statutes addressing claims against estates established "statute[s] of limitation affecting only the remedy." Although the statute at issue has been amended since Woods, the specific reference to the term "statute of limitations" provides support for our conclusion that the limitation is only upon the remedy.

Whether the application of the text of section 30-2-310(b) would render a debt no longer "due . . . under law" for purposes of section 71-5-116 is determinative. Section 30-2-310(b) provides that all claims and demands not filed by the state within the prescribed time period "shall be forever

---

[13](...continued)
available to judges engaged in the deliberative process. Whether they serve as a form of neutral reasoning depends . . . on how they are used . . . ."); but see William N. Eskridge, Jr. & Philip P. Frickey, Foreword: Law as Equilibrium, 108 Harv. L. Rev. 26, 67 (1994) (suggesting that, because "often it is not as important to choose the best convention as it is to choose one convention, and stick to it," there are benefits to following canons even when "unrealistic").

[14] The courts of Tennessee have adopted the traditional rule that "we will not apply a particular interpretation to a statute if that interpretation would yield an absurd result." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000). The risk of such an arguably absurd interpretation has been significantly mitigated in the current version of section 71-5-116, which allows for the filing of either a release, waiver, or "statement . . . that no amount is due." Tenn. Code Ann. § 71-5-116(c)(2)(A)-(C) (2008).

-16-

barred," a phrase appearing with slight variations repeatedly throughout our code. See Tenn. Code Ann. § 7-32-124(b) (2005 & Supp. 2008); Tenn. Code Ann. §§ 28-2-102, 28-2-110(a), 28-3-102(a), 28-3-114(a) (2000 & Supp. 2008); Tenn. Code Ann. § 32-4-108 (2007 & Sup. 2008); Tenn. Code Ann. §§ 41-2-148(d)(1), 41-3-106(d)(1) (2006); Tenn. Code Ann. § 43-38-1027(a) (2007); Tenn. Code Ann. § 47-13-120(b) (2001); Tenn. Code Ann. §§ 50-6-203(b)(1)-(2), 50-6-203(f), 50-6-306(a) (2008); Tenn. Code Ann. § 56-32-126(b)(3)(D) (2008); Tenn. Code Ann. § 69-4-105(e) (2004). Its use in section 30-2-310 can be traced to section 3 of chapter 175 of the 1939 Public Acts, which implemented a broad statutory framework for the administration of estates and provided that

> [a]ll claims and demands not filed with the clerk, as required by this Act or in which suit shall not have been brought or revived before the end of one (1) year from the date of the notice to creditors . . . shall be forever barred from assertion against the personal representative and from payment out of assets while the same are in his hands, and the personal representative may, without liability for the payment, distribute the assets of the estate and close the administration.

Act of March 6, 1939, 1939 Tenn. Pub. Acts. 651, 655 (emphasis added). Notably, this provision barred "claims and demands" from being either asserted or paid out of an estate's assets. Further, it explicitly allowed the estate to be closed after the limitations period had elapsed. That language, however, was removed as part of the sweeping modification of the Tennessee Code that occurred in 1950, leaving only the more ambiguous phrase "forever barred." Tenn. Code Supp. § 8196.4 (1950); Tenn. Code Ann. § 30-5-13 (1955).

Our reference to dictionaries, upon which we typically rely for widely-accepted definitions of individual words and terms, does not resolve the ambiguity. See, e.g., State v. Meeks, 262 S.W.3d 710, 719-20 (Tenn. 2008) (interpreting Tenn. R. App. P. 3(c)(1)); Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 309 (Tenn. 2008) (interpreting Tenn. Code Ann. § 47-18-109(a)(1)); State v. Edmondson, 231 S.W.3d 925, 927-28 (Tenn. 2007) (interpreting Tenn. Code Ann. § 39-13-404(a)); State v. Pickett, 211 S.W.3d 696, 705 (Tenn. 2007) (interpreting Tenn. Code Ann. § 39-17-1003(a)). We have specifically identified Black's Law Dictionary as a reliable source. Edmondson, 231 S.W.3d at 928 ("When the Legislature does not provide a specific definition for a statutory term, this Court may look to other sources, including Black's Law Dictionary, for guidance."). At the time of both the 1939 enactment as well as the 1950 revision, the 1933 edition of Black's was the most recent, defining "barred" as "[o]bstructed by a bar; subject to hindrance or obstruction by a bar or barrier which, if interposed, will prevent legal redress or recovery; as, when it is said that a claim or cause of action is 'barred by a statute of limitations.'" Black's Law Dictionary 197 (3d ed. 1933). The 1947 edition of Funk & Wagnalls New College Standard Dictionary, however, offered this definition of the verb "bar," as used in a legal context: "The preventing or stopping of an action by showing that the plaintiff has no right of action." Funk & Wagnalls New College Standard Dictionary 96 (1947). These definitions offer contradictory guidance on the question of whether a debt underlying a "barred" "claim or demand" may still exist as "due . . . under law" for the purposes of a mandatory waiver or release. A sum is "due" when it is "[o]wing or payable; constituting a debt." Black's Law Dictionary 538 (8th ed. 2004). Whether

a cause of action is "subject to hindrance or obstruction," on one hand, and whether the underlying debt is "owing or payable," on the other, are distinct questions.

We are thus faced with two plausible constructions of the relevant statutes. The first, adopted by the Court of Appeals not only in this case but in Henkel, Anderson, and Hare, interprets section 30-2-310(b) as establishing a bar to recovery of all non-tax claims, including any debt due the Bureau for repayment of correctly paid medical benefits. Under this reading, while section 71-5-116 may create additional procedural hurdles to the closing of an estate (because it would still require a representative to file a "release" of its zeroed balance), it would not enable the Bureau to pursue its claim after one year. The second is the opinion of the Court of Appeals in Roberts. While acknowledging that section 30-2-310 establishes a general framework for when claims against an estate must be filed, the Roberts panel adopted an interpretation of section 71-5-116 (as it existed at the time of Ms. Tanner's death) entitling the Bureau to recover until a waiver or release is obtained by the representative of the estate, regardless of the passage of time, because the more specific provisions of section 71-5-116(c)(2) established an implied exception to the general rule of section 30-2-310(b).

In our effort to determine which of the two courses the legislature intended, we may consider the statute's "nature and purpose, and the consequences that would result from a construction one way or the other." Scheele v. Hartford Underwriters Ins. Co., 218 S.W.3d 636, 640 (Tenn. 2007) (quoting Presley v. Bennett, 860 S.W.2d 857, 860-61 (Tenn. 1993)). Federal financial support is absolutely essential to the state's ability to administer TennCare. As previously explained, section 71-5-116(c)(2) was enacted in furtherance of the State's obligation to seek recovery of costs under 42 United States Code section 1396p. We do not need to detail, in this judicial opinion, the time and effort the state has invested in order to fund its share of the program. We are thus inclined to presume that the General Assembly meant to provide a robust and effective mechanism to both recoup its expenses and fulfill its obligations to the federal government. In our view, an interpretation that favors the Bureau's ability to recover medical benefits more faithfully advances the serious policy considerations that motivated the General Assembly to enact the waiver and release provisions of section 71-5-116. Whereas the construction adopted by the Court of Appeals in Henkel, Anderson, and Hare would extend minimal protections for the mandatory waiver and release provisions in the statute, the interpretation advanced by Roberts would offer assurances that "correctly paid medical assistance" should be reimbursed to the state.

Moreover, Mr. Tanner's position runs afoul of an established rule of construction: when there is an ambiguity as to whether a claim by the state has been made subject to a statute of limitations, the relevant statutes must be construed in a manner favorable to recovery. See Hamilton County Bd. of Educ. v. Asbestospray Corp., 909 S.W.2d 783 (Tenn. 1995). Such a rule assures that, unless the General Assembly clearly intended otherwise, "the public should not suffer because of the negligence of its officers and agents." Id. at 785 (quoting State ex rel. Bd. of University & Sch. Lands v. Andrus, 671 F.2d 271, 274 (8th Cir. 1982)). "[W]e have repeatedly stated that statutes of limitation are looked upon with disfavor in actions brought by the State, and will not be enforced in the absence of clear and explicit statutory authority to do so." Id. (citing Dunn v. W.F. Jameson &

Sons, Inc., 569 S.W.2d 799, 802 (Tenn.1978); Anderson v. Sec. Mills, 133 S.W.2d 478 (Tenn. 1939)). This substantive canon of construction[15] has typically been applied in instances where it is unclear from the text of a statute of limitations itself whether it applies to the state. Id. We believe, however, that the same principles are applicable when we are determining whether an ambiguous statutory provision exempts a certain type of state claim from a statute of limitations. This ground thus also favors the Bureau.

Finally, the legislative history and context of the statute support the interpretation espoused by the Bureau. We have closely reviewed the proceedings in the General Assembly when the waiver and release provisions were adopted in 2002. Because the provisions were adopted as just one piece of the broad revision of many aspects of the TennCare program in the TennCare Reform Act of 2002, the estate recovery provisions did not receive extensive attention. The limited discussion of the provisions that did occur, however – for example, during the June 29, 2002 Senate Session – on balance supports the proposition that the waiver and release provisions were intended to assure recovery in the event that the Bureau did not actively pursue the claim.

Moreover, although we recognize the limits of the interpretive value of post-enactment statements and events, the 2006 amendment and the related proceedings of the General Assembly provide some limited additional context in support of the Bureau's position. That amendment, which, as we stated earlier, became effective on January 1, 2007, and is not applicable to this case, established that the Bureau must, in at least some situations, comply with the title 30 claim-filing process. At an April 11, 2006, hearing of the House Judiciary Committee, the bill's sponsor Representative Kim McMillan explained that, under the law as it existed prior to the 2006 amendment, "[t]here was some problem with these estates remaining open for a long period of time, and the intent of the bill is to make sure that the state is treated like any other creditor as far as the one year [limitation] that [was] referenced earlier." (Emphasis added.) Describing the bill to the House Budget Subcommittee on April 19, 2006, Representative McMillan stated that it "simply deals with the ability to treat TennCare equitably with respect to other creditors in processing claims against decedents' estates." These and other 2006 statements provide confirmation that, at the very least, some members of the General Assembly were concerned that the 2002 statute had allowed the Bureau to effectively circumvent the one-year limitations period.

Our conclusion, therefore, is that at the time of Ms. Tanner's death, section 71-5-116(c) permitted adjustment or recovery from an estate until a waiver or release was granted by the Bureau, regardless of any limitations on ordinary claims imposed by section 30-2-310(b).[16] We further hold that, incident to its right to demand payment pursuant to the release and waiver provisions, the

_____

[15] Substantive canons provide presumptions for interpreting ambiguous statutes that explicitly consider the substance of the law being interpreted. These canons stand in contrast with language canons – like the last antecedent rule – which only provide presumptions for interpreting words and syntax. See Andrew C. Spiropoulos, A Defense of Substantive Canons of Construction, 2001 Utah L. Rev. 915, 934.

[16] We express no opinion regarding the applicability of constraints on timeliness based in either statutes other than section 30-5-306 to 30-5-310 or on the common law.

Bureau was permitted to file a formal claim against the estate, despite the fact that claims of most other types would have been barred.

### 4. Insolvency

Finally, for the purposes of completeness, we will address the Bureau's argument that it should be excepted from the statute of limitations because the proceedings below constituted an insolvency proceeding. Tennessee Code Annotated section 30-2-501(a) (2001) provides:

> Other than by filing of claims or the revivor of actions pending against the decedent at the time of the decedent's death, no suits shall be brought or other action taken by any creditor against the estate until the expiration of three (3) months from the issuance of letters, and nothing herein shall be so construed as to permit the filing of claims or revivor of pending actions, or institution of suits against the personal representative after twelve (12) months from the date of death of the decedent, except, however, for insolvency proceedings or claims filed by creditors within the period prescribed in the notice published or posted in accordance with § 30-2-306(c).

(Emphasis added.) The Bureau argues that this provision extends the statute of limitations for insolvency proceedings and that, because its claim exceeded the likely value of the Tanner estate's assets, the proceedings below should be treated as insolvency proceedings.

The reference to "insolvency proceedings" in section 30-2-501 can be traced to an earlier, separate statutory procedure for administering insolvent estates, a statute which has been repealed. See Tenn. Code Ann. §§ 30-2-501, 30-5-102 to -144 (1984). Prior to 1989, "at any time after" a suggestion of insolvency, a creditor or an estate's representative could file a new bill in chancery court. Tenn. Code Ann. § 30-5-106. The administration of the estate was then transferred from probate to chancery court. Tenn. Code Ann. § 30-5-107. Under current statutes, however, insolvency does not give rise to new proceedings in a different court. Tenn. Code Ann. §§ 30-5-101 to 30-5-105 (2001). Instead, insolvency is addressed in the course of the already-initiated probate proceedings by way of filing a notice of insolvency only "[a]fter the time for filing claims has expired, as provided by § 30-2-310, if the estate is unable to pay all of its creditors." Tenn. Code Ann. § 30-5-102. The notice of insolvency must contain "an accounting of assets which have come into the hands of the personal representative and a proposed plan of distribution in accordance with § 30-2-317." Tenn. Code Ann. § 30-5-103(a). "If no objections are filed within the thirty-day waiting period [after the filing of a notice of insolvency], the personal representative may execute the proposed plan of distribution and close the estate, relieving the personal representatives of any further liability to the estate." Tenn. Code Ann. § 30-5-103(c).

In this case, no notice of insolvency has been filed. The Bureau has raised only the likelihood that if it has filed a timely claim, a notice of insolvency will be necessary. That may be so. After failing to file a timely claim, however, a party would not be free to take advantage of the insolvency that that claim might have brought about. Because the trial court held that the Bureau did not file its claim in time, the procedural trigger for treating the estate as insolvent – the filing of the notice

-20-

of insolvency – has never occurred. We conclude, therefore, that, even if section 30-2-501(a) does create an exception to the ordinary statutes of limitations,[17] that exception does not apply in this case.

## Conclusion

Section 30-2-310(b) creates a general one-year statute of limitations on state claims against an estate, except claims for taxes. Section 71-5-116(c), however, imposes a duty on the representative of an estate to actively seek a release or waiver of any "medical assistance correctly paid," 42 U.S.C. § 1396p, owed under the TennCare program. Because Mr. Tanner did not do so, and no waiver or release has issued, the Bureau was empowered under the terms of the applicable statute, as then written, to file the claim beyond the one-year period of limitation. At least until the first day of January, 2007, when the most recent amendment took effect, claims by the Bureau were not subject to a one-year statute of limitations, regardless of whether it received a notice to creditors. The judgment of the Court of Appeals is, therefore, reversed and the cause is remanded to the Circuit Court for Davidson County for proceedings in accordance with this opinion. Costs are assessed to the appellee.

 

_____
GARY R. WADE, JUSTICE

---

[17] The question of what effect, if any, section 30-2-501(a) has on timeliness requirements for claims against estates that are subject to a notice of insolvency under post-1989 law is not before us.

-21-