IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 13, 2015 Session

IN RE JAYDEN B.T.

Appeal from the Juvenile Court for Roane County
No. 2013-JC-200      Dennis W. Humphrey, Judge

No. E2014-00715-COA-R3-PT – Filed June 23, 2015

This is a termination of parental rights case, focusing on Jayden B.T., the minor child ("the Child") of Jayson T. ("Father") and Britney B. ("Mother"). On July 2, 2013, the Child's maternal aunt and her husband, with whom the Child had been residing, filed a petition to terminate the parental rights of both parents. Following a bench trial, the trial court found that grounds existed to terminate the parental rights of both parents upon its finding, by clear and convincing evidence, that the parents had abandoned the Child by willfully failing to visit the Child, willfully failing to support the Child, and failing to provide a suitable home. The trial court also found clear and convincing evidence as to both parents of the statutory ground of persistence of the conditions that led to removal of the Child. The court further found, by clear and convincing evidence, that termination of Father's and Mother's parental rights was in the Child's best interest. Father has appealed.[1] We conclude that the evidence was insufficient to support a finding that Father abandoned the Child through failing to visit him and therefore reverse the trial court's finding as to that ground. In addition, we determine that the statutory grounds of persistence of the conditions leading to removal and abandonment through failure to provide a suitable home are not applicable to Father, and we therefore reverse the trial court's findings regarding those two grounds. We affirm the trial court's judgment in all other respects, including the termination of Father's parental rights upon the ground of abandonment through willful failure to support the Child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

---

[1]Mother is not a party to this appeal.

Cashauna Lattimore, Knoxville, Tennessee, for the appellant, Jayson T.

Browder G. Williams and Julianna J. Loden, Kingston, Tennessee, for the appellees, Cassie L. and James L.

**OPINION**

I.  Factual and Procedural Background

Father and Mother were never married.  The Child, a son, was born to them in August 2011.  Following the Child's birth, he resided for five months with both parents and the maternal grandmother at the maternal grandmother's home in Kingston.  The maternal grandmother testified at trial that both Father and Mother provided care to the Child during those early months of the Child's life.  She acknowledged, however, that she and both parents were "doing drugs" during the time that they lived with her.

When the Child was approximately five months old, he and both parents left the maternal grandmother's home and moved in with Father's grandparents, the Child's paternal great-grandparents, at their home in Harriman.  The parents subsequently relocated with the Child to reside with Father's parents, the Child's paternal grandparents, also in Harriman.

In July 2012 when the Child was eleven months old, Mother and Father separated, apparently ending their relationship.  Mother and the Child moved in with the Petitioners, Mother's aunt, Cassie L., and her husband, James L.  According to Cassie L.'s and the maternal great-grandmother's respective testimonies, Cassie L. had cared for the Child at her home on Sunday night through Monday afternoon nearly every week from the Child's birth through the time that Mother and the Child moved in with the Petitioners.  In September 2012, Mother vacated the Petitioners' home without explanation for several days, leaving the Child with the Petitioners.  Although Mother subsequently reappeared, Cassie L. filed a petition for temporary emergency custody of the Child, which the trial court granted in an order entered on October 31, 2012.  Cassie L. was in communication with Father a few days after entry of the emergency custody order.  She testified at trial that Father told her on November 5, 2012, that he was glad the Petitioners "got custody" of the Child.

Upon entry of the October 31, 2012 order, the trial court directed the parties to mediation, but mediation never occurred due to, *inter alia*, both parents' respective periods of incarceration.  During a hearing conducted on April 10, 2013, the parents stipulated that the Child was dependent and neglected while in their care.  One year later

2

on April 29, 2014, the trial court entered an agreed order adjudicating the Child dependent and neglected as to Father and Mother. The court concomitantly preserved custodial care of the Child with the Petitioners.[2]

On July 2, 2013, the Petitioners filed a petition to terminate both parents' rights to the Child. As relevant to Father's appeal, the Petitioners alleged grounds of "abandonment as defined by T.C.A. §36-1-113(g)(1) and as defined by T.C.A. §36-1-102," as well as the statutory ground of persistence of conditions leading to removal of the Child from a parent's home, pursuant to Tennessee Code Annotated § 36-1-113(g)(3). The Petitioners also averred that Father was incarcerated in the Roane County Jail at the time of the petition's filing. Upon consideration of the Petitioners' request, the trial court appointed attorney Katherine Parks as guardian *ad litem* to represent the Child in an order entered July 2, 2013. Father filed an answer to the petition on July 31, 2013.

It is undisputed that Father was incarcerated during much of the Child's life prior to the filing of the termination petition. According to Father's testimony, the following is a delineated timeline of his relevant incarceraton episodes and other whereabouts:

- November 13, 2012: Father was arrested and charged with violation of probation after undergoing a drug screen and testing positive for cocaine, marijuana, and oxycodone. He was incarcerated in the Roane County Jail for seventy-eight days through approximately the end of January 2013.

- On or about January 31, 2013: Father was transferred into the custody of Knox County to face a felony charge of theft of property.

- February 2013 through June 18, 2013: Father resided in Roane County. For two and one-half weeks in March 2013, he was employed at a restaurant in Harriman.

- June 19, 2013: Father was arrested in Roane County on a Knox County warrant for violation of probation after he submitted to a drug screen and tested

---

[2]The appellate record does not contain copies, respectively, of the October 2012 temporary emergency custody petition, the October 2012 emergency custody order, or the April 2014 adjudicatory order. The trial court noted the two prior orders in its findings of fact submitted as an amendment to the final judgment terminating Father's parental rights. The parties do not dispute the content or effect of the orders entered during the dependency and neglect proceedings involving the Child.

positive for cocaine and oxycodone. He then served a six-month sentence, effectively 155 days, in the Roane County Jail through November 21, 2013.

- November 21, 2013: Father was transferred to the Knox County Jail to serve two days for failing to appear in court.

- Father was released on or about November 23, 2013, and at the time of trial, was on unsupervised probation in Knox County. He had completed his probation requirements for charges incurred in Roane County.

Father testified that at the time of trial, he was residing with his mother at her home in Harriman. He acknowledged that he sometimes stayed overnight with his girlfriend, B.H., who lived in a housing project in Lenoir City, but he denied residing with B.H. Father was unemployed. He did not own a vehicle or possess a valid driver's license. He testified that he had been interviewing for potential employment and had secured a position with "Access" in Knoxville. He stated that he could not begin this new position until January 2014 and that in the meantime, he had a "second interview" scheduled with a fast-food restaurant in Lenoir City.

Following a bench trial conducted on December 19, 2013, the trial court entered a final judgment on January 31, 2014, terminating the parental rights of both parents to the Child. Father timely appealed. This Court subsequently entered an order directing the trial court to enter an amended final judgment making specific findings of fact and conclusions of law pursuant to Tennessee Code Annotated § 36-1-113(k). Complying with this order, the trial court entered specific findings of fact and conclusions of law on September 4, 2014.

As to Father, the trial court found by clear and convincing evidence that Father had abandoned the Child by willfully failing to visit him, willfully failing to support him or make reasonable payments toward support, and failing to provide a suitable home. The trial court also found by clear and convincing evidence that conditions leading to the Child's removal from Father's home persisted, preventing the return of the Child to Father. The court further found by clear and convincing evidence that termination of Father's parental rights was in the Child's best interest. The court also noted that the Petitioners had expressed their intention to adopt the Child.

II. Issues Presented

Father presents five issues on appeal, which we have restated slightly as follows:

4

1. Whether the trial court erred by finding that there was clear and convincing evidence of the statutory ground of abandonment by willful failure to support the Child.

2. Whether the trial court erred by finding that there was clear and convincing evidence of the statutory ground of abandonment by willful failure to visit the Child.

3. Whether the trial court erred by finding that there was clear and convincing evidence of the statutory ground of abandonment through failure to provide a suitable home for the Child.

4. Whether the trial court erred by finding that there was clear and convincing evidence of the statutory ground of persistence of the conditions leading to removal of the Child from Father's home.

5. Whether the trial court erred by finding clear and convincing evidence that termination of Father's parental rights was in the Child's best interest.

### III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586, 597 (Tenn. 2010). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96,

97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has instructed:

> In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36-1-113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State, Dep't of Children's Servs. v. Mims* (*In re N.B.*), 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

## IV. Statutory Abandonment

Tennessee Code Annotated § 36-1-113 (2014) lists the statutory grounds for termination of parental rights, providing as follows:

> (a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.
>
> * * *
>
> (c) Termination of parental or guardianship rights must be based upon:

6

(1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)     That termination of the parent's or guardian's rights is in the best interests of the child.

The trial court terminated Father's parental rights on grounds, *inter alia*, that he abandoned the Child.  Tennessee Code Annotated § 36-1-113(g)(1) (2014) provides in relevant part:

(g)     Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1)     Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

In the case at bar, the Petitioners correctly note on appeal that because of Father's arrest on June 19, 2013, and subsequent incarceration prior to the termination petition's filing, the definition of abandonment through willful failure to visit or support contained within Tennessee Code Annotated § 36-1-102(1)(A)(iv) (2014) applies.  This subdivision provides in pertinent part:

(iv)    A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration . . . .

Pursuant to this definition, the statutorily determinative period applicable to Father began four months immediately preceding his June 19, 2013 arrest.  The determinative period therefore spanned February 19, 2013, through June 18, 2013.  *See In re D.H.B.,* No. E2014-00063-COA-R3-PT, 2015 WL 1870303 at *8 (Tenn. Ct. App. Apr. 23, 2015)

7

(interpreting the four-month period "immediately preceding" the parent's incarceration as ending on the day before the actual date of incarceration).

The dates of the statutorily determinative period were the source of some confusion during the termination proceedings. In finding through its amended final judgment that Father had willfully failed to support the Child, the trial court specified the four-month period immediately preceding the filing of the termination petition. *Cf.* Tenn. Code Ann. § 36-1-102(1)(A)(i) (providing as to the grounds of willful failure to visit or support a statutorily determinative "period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights" for a parent or guardian who is not incarcerated at the time of the institution of the action or proceeding). However, the trial court also found that Father had willfully failed to support the Child "at any other time." Regarding Father's willful failure to visit the Child, the trial court did not isolate a determinative period. The court did find, however, that Father had willfully failed to engage in more than token visitation during the entire time period that the Child's custody was before the court. We therefore conclude that the trial court's findings of Father's willful failure to visit and support the Child were inclusive of the statutorily determinative period.

Pursuant to the statute, the court must also find that a parent's failure to visit or support during the determinative period was willful. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). As this Court has previously explained:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

*In re Audrey S.*, 182 S.W.3d at 863.

Failure to visit or support a child is "willful" when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864. Further, failure to visit or to support is not excused by another person's conduct "unless the conduct actually prevents the person with the obligation from performing his or her duty . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *Id.*

This Court further explained:

8

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* (citations omitted).

This Court has often held that a parent's "demeanor and credibility as a witness also play an important role in determining intent, and trial courts are accordingly in the best position to make such determinations." *In re Adoption of Destiny R.D.*, No. M2011-01153-COA-R3-PT, 2012 WL 1066496 at *7 (Tenn. Ct. App. Mar. 27, 2012) (citing *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003)). Further, as Tennessee Code Annotated § 36-1-102(1)(G) expressly provides: "Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made." Incorporating the foregoing analysis, we shall review in turn each form of statutory abandonment found by the trial court.

## A. Willful Failure to Support

In its amended final judgment, the trial court specified the following regarding the statutory ground of willful failure to support the Child:

Abandonment – Failure to Provide Support: The Court finds by clear and convincing evidence that neither respondent has paid any child support for the benefit of this child either in the four months preceding the filing of this petition or at any other time though both respondents claim to have worked and earned income from time to time in the four months preceding the filing of this petition and during other times that the petitioners have had custody of their child.

The court therefore found that Father had willfully failed to support the Child at any time, inclusive of the determinative four-month period prior to Father's incarceration on June 19, 2013. Upon our thorough review of the record, we agree with the trial court as to this statutory ground as it relates to Father.

According to Father's testimony, child support was set in this matter during a court hearing to which Father was transported while in the custody of Roane County. The record before us does not contain the child support order, and testimony is unclear as

to whether this order was entered during Father's first or second incarceration in Roane County. At trial, however, Father acknowledged his obligation to support the Child even in the absence of a court order, and he does not dispute this obligation on appeal. *See* Tenn. Code Ann. § 36-1-102(1)(H) (2010) ("Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children."). We note that "the obligation to pay support exists even in the absence of a court order to do so." *State, Dep't of Children's Servs. v. Culbertson*, 152 S.W.3d 513, 523-24 (Tenn. Ct. App. 2004).

Father also does not dispute the trial court's finding that he failed to financially support the Child during the determinative period or at any time the Child was in the Petitioners' care. He contends that the trial court erred by finding that his failure to support the Child was willful. *See In re R.L.F.*, 278 S.W.3d 305, 320 (Tenn. Ct. App. 2008) (overruled on other grounds by *In re Kaliyah S.* 455 S.W.3d 533 (Tenn. Jan. 22, 2015)) ("'A parent who fails to support a child because he or she is financially unable to do so is not willfully failing to support the child.'") (quoting *In re M.J.M., Jr.*, No. M2004-02377-COA-R3-PT, 2005 WL 873302 at *8 n.17 (Tenn. Ct. App. Apr. 14, 2005)). Father asserts that because he was unemployed for all but two and one-half weeks during the determinative period, he did not have the ability to pay support. We disagree.

Father testified that in March 2013, he was employed for two and one-half weeks at a restaurant in Harriman. He was otherwise unemployed during the time period that the Child was in the Petitioners' care, inclusive of the four-month determinative period prior to Father's incarceration in June 2013. His last employment prior to the restaurant position was working with the Child's paternal grandfather on a roofing job before he and Mother separated in 2012. When questioned regarding whether he had applied for other employment prior to his June 2013 incarceration, he answered in the affirmative but offered no specific details. Father presented no evidence of any condition that would have prevented him from working. When questioned regarding whether he had paid any funds to the Petitioners for the Child's support, Father stated that he "gave [Cassie L.] like five or ten dollars here at a time." He immediately stated, however, that Cassie L. would say he did not pay any support. He subsequently testified that he had offered Cassie L. "gas money" but that she had refused to accept it. Father presented no documentation of any financial contribution to the Child's support. He acknowledged that he had never provided holiday or birthday presents for the Child.

Cassie L. testified that Father had not provided her with any type of financial support for the Child. She denied that Father had ever offered her gas money. According to Cassie L., Father once gave the Child a dollar bill, which was preserved in the Child's

baby book with the words, "Your first dollar from Daddy," written on it. In remarks made at the close of trial, the court explicitly "resolve[d] issues of credibility" against Father and Mother. We emphasize that such determinations regarding witness credibility are entitled to great weight on appeal. *See Jones*, 92 S.W.3d at 838.

Upon our careful and thorough review of the record, we conclude that the evidence does not preponderate against the trial court's finding that Father failed to make any reasonable payments toward support of the Child even when he was employed in March 2013. Furthermore, Father failed to offer any details that would support a finding that he sought other employment prior to his incarceration and failed to offer any justifiable excuse for his failure to provide at least some measure of financial support. *See In re Audrey S.*, 182 S.W.3d at 864 (explaining that failure to visit or support a child is "willful" when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so."). The trial court did not err in terminating Father's parental rights based upon this statutory ground.

### B. Willful Failure to Visit

In its "conclusions of law," entered as an amendment to the final judgment, the trial court specified the following regarding the ground of abandonment by willful failure to visit the Child:

> Abandonment – Failure to Visit: The evidence is clear and convincing that both parents have failed to make any significant efforts to visit with their child while this matter has been pending, have exercised only token and sporadic visitation, and failed to take advantage of the mediation process offered by the Court and the adjudicatory order to allow them to arrange reasonable access with their child.

Upon a careful and thorough review of the record, we conclude that the evidence is insufficient to support the trial court's finding that Father's visitation with the Child during the statutorily determinative period was only token in nature.

It is undisputed that during the determinative period of February 19, 2013, through June 18, 2013, all visitation between Father and the Child was arranged through Cassie L. and either took place at the Petitioners' home or at a public location with Cassie L. present. Cassie L. testified that following Father's release from jail at the end of January 2013, he visited the Child twice in February and that one of those visits was in response to a request from Mother following a court proceeding. According to Cassie L., Father

11

visited the Child twice in March, once when she met him at a McDonald's in Harriman with the Child and once when Father's former girlfriend, C.C., transported him to the Petitioners' residence and stayed with Father throughout the visit. Father again visited the Child twice in April, once at the Petitioners' residence and once when Cassie L. brought the Child to visit Father at the paternal grandmother's residence. Father visited the Child once in May when Cassie L. met him at a public park in Kingston. Father was accompanied during that May visit by his sister and his current girlfriend, B.H. Cassie L. also transported the Child once in June to visit with Father at Roane County Park, where he and the Child played in the water on a "Splash Pad." Father testified generally that before he was incarcerated on June 19, 2013, he visited the Child "five to ten times." He acknowledged that he had primarily depended on others to transport him to visits with the Child.

Tennessee Code Annotated § 36-1-102(1)(C) defines token visitation as "perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." *See also In re Keri C.*, 384 S.W.3d 731, 748 (Tenn. Ct. App. 2010) ("Whether visitation is 'token' under this definition is a fact-intensive inquiry to be decided on a case-by-case basis."). According to Cassie L.'s testimony in the instant action, Father visited the Child on seven to eight occasions during the four-month determinative period. Testimony regarding Father's two visits with the Child in February 2013 was not specific as to dates, but it would be reasonable to credit Father with at least one of those visits after the determinative period began on February 19. Father's visitation with the Child during the time period at issue thus averaged two visits per month, a frequency that, under the circumstances of this case, we determine cannot be characterized as perfunctory or token. As to the duration of Father's visits with the Child, Cassie L. testified that one visit lasted twenty minutes. The record is otherwise devoid of evidence regarding the exact duration of Father's visits with the Child. Although Father sometimes depended on a paramour for transportation to a visit, there is no indication in the record that Father ignored the Child in favor of a paramour during any particular visit.

We conclude that the record does not contain evidence sufficient to support a finding of clear and convincing evidence that Father's visitation with the Child during the statutorily determinative period can be characterized as token. *See, e.g., In re E.M.P.*, No. E2006-00446-COA-R3-PT, 2006 WL 2191250 at *5 (Tenn. Ct. App. Aug. 3, 2006) (determining that given the "sparse record" on appeal, the record did not contain clear and convincing evidence that Mother's one visit with the child in four months could be characterized as token); *In re K.C.*, No. M2005-00633-COA-R3-PT, 2005 WL 2453877 at *9 (Tenn. Ct. App. Oct. 4, 2005) (reversing the trial court's determination that the mother abandoned the child by engaging in only token visitation when the child spent one

or two weekends a month with the mother); *cf. In re Keri C.*, 384 S.W.3d at 751 (concluding that visitation during the determinative period of "once-a-month half-hour contacts" with the two-year-old child "at large family gatherings [could] not be viewed as a reasonable attempt to forge a meaningful relationship with the child" and were thus token in nature); *In re Audrey S.*, 182 S.W.3d at 867 (concluding that the mother's one or two visits with the children in the four months preceding the mother's incarceration were "nothing more than token visitation"). Having determined that the trial court erred by characterizing Father's visitation with the Child during the statutorily determinative period as token, we reverse the trial court's finding that Father abandoned the Child by willfully failing to visit him.

## C. Failure to Provide a Suitable Home

The trial court also found that Father had abandoned the Child upon the statutory ground of failure to provide a suitable home. Father contends that the trial court erred by applying this ground because neither the Department of Children's Services ("DCS") nor any other licensed child-placing agency was involved in the court order removing the Child from the parental home. We agree with Father on this issue.

Regarding the definition of abandonment applicable to this ground, Tennessee Code Annotated § 36-1-102(1)(A)(ii) provides:

> (ii)    The child has been removed from the home of [a] parent or parents or a guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and <u>the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist [a] parent or parents or a guardian or guardians to establish a suitable home for the child</u>, but that [a] parent or parents or a guardian or guardians have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be

13

reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department; . . .

(Emphasis added).

Pursuant to the plain language of the statute, the definition of abandonment provided in subsection -102(A)(1)(ii) is inapplicable to a private action such as this one that did not involve DCS or a licensed child-placing agency. *See generally In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009) ("When a statute is clear, we apply the plain meaning without complicating the task."). Moreover, termination of parental rights based upon this statutory ground also requires proof that the child was removed from the home of the parent whose rights are being terminated. *See* Tenn. Code Ann. § 36-1-102(1)(A)(ii); *In re K.M.K.*, No. E2014-00471-COA-R3-PT, No. 2015 WL 866730 at *5 (Tenn. Ct. App. Sept. 30, 2014) (concluding that pursuant to the statute, termination of parental rights based upon abandonment by failure to provide a suitable home "requires proof that the Children were removed from the home of the parent whose parental rights are sought to be terminated.").

It is undisputed that the Child was residing with Mother at the Petitioners' home prior to Mother's exit from the home and the Petitioners' subsequent filing of the emergency petition for temporary custody. We therefore conclude that the statutory ground of abandonment through failure to provide a suitable home is inapplicable to Father in the instant action and reverse the trial court's finding as to this ground.

We also recognize Father's argument that the trial court erred by finding the statutory ground of abandonment through failure to provide a suitable home because it was not specifically pled in the termination petition. The Petitioners referenced in the petition the pertinent statute, but they cited only generally the definition of abandonment provided by Tennessee Code Annotated § 36-1-102. This statutory definition of abandonment contains several distinct grounds. *See id.* at (1)(A)(i)-(v); *see, e.g.*, *In re Johnny K.F.*, No. E2012-02700-COA-R3-PT, 2013 WL 4679269 at *7 (Tenn. Ct. App. Aug. 27, 2013) ("The petition, while referencing the pertinent statute, failed to identify the specific ground of abandonment by wanton disregard."). However, "'[a] ground for termination not included in the petition can be properly found if the ground was tried by implied consent.'" *In re Alysia S.*, ___ S.W.3d ___, ___, 2014 WL 7204406 at *20 (Tenn. Ct. App. Dec. 17, 2014) (quoting *In re Johnny K.F.*, 2013 WL 4679269 at *8). Father does not dispute that the grounds of abandonment through failure to visit and support the Child were tried by implied consent, and our review of the record supports a determination that these two grounds were indeed tried by implied consent. Father does

dispute, however, that the ground of abandonment through failure to provide a suitable home was tried by implied consent. Because we have determined that this statutory ground was inapplicable to the circumstances underlying the instant action, we further determine that the issue of whether the ground was tried by implied consent is pretermitted as moot.

## V. Persistence of Conditions Leading to Removal of the Child

The trial court further found clear and convincing evidence of the statutory ground of persistence of conditions leading to removal of the Child from the parents' home. As explained above, however, the Child in the instant action was not removed from Father's home by the trial court's emergency protective order. Regarding this statutory ground, Tennessee Code Annotated § 36-1-113(g)(3) (2014) provides the following:

> (3) <u>The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months</u> and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and
>
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home; . . .

(Emphasis added.)

Although neither party addresses the fact that the Child was not removed from Father's home in the context of this issue, we determine that the trial court erred by applying this statutory ground. As with abandonment through failure to provide a suitable home, this Court has also held that the ground of persistence of conditions leading to the removal of the child is not applicable when the child was not removed from the home of the parent whose rights are at issue. *See In re K.M.K.*, No. E2014-00471-

15

COA-R3-PT, 2015 WL 866730 at *7 (Tenn. Ct. App. Feb. 27, 2015) (citing *In re Maria S.*, No. E2013-01295-COA-R3-PT, 2013 WL 1304616 at *10 (Tenn. Ct. App. Apr. 1, 2013), as holding, "burden of proof not met where 'the Children were not removed from Father's home' and the father was incarcerated during the pertinent time").

As in the *In re K.M.K.* decision, we hold that the statutory ground of persistence of conditions is not applicable to Father under the circumstances presented here inasmuch as the record contains no court order removing the Child from Father's home. In addition, it is undisputed that when the trial court entered the emergency protective order placing the Child in the temporary custody of the Petitioners, the Child had not been residing in Father's home. Accordingly, we reverse the trial court's finding as to persistence of conditions as a statutory ground for terminating Father's parental rights.

## VI. Best Interest of the Child

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877; *see also In re Arteria H.*, 326 S.W.3d 167, 175 (Tenn. Ct. App. 2010) ("A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest."). Tennessee Code Annotated § 36-1-113(i) (2014) provides a list of factors the trial court is to consider when determining if termination of parental rights is in the child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Further, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services

16

agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

In analyzing the best interest factors, the trial court in its amended judgment terminating Father's parental rights specified the following findings of fact in relevant part:

This child has resided in the care of the petitioner, Cassie [L.], on a regular basis since his birth.

17

An agreed adjudicatory order was entered in this case on April 10, 2013, in which the respondents stipulated that there was clear and convincing evidence that this child was dependent and neglected in their care and that legal custody should be placed with the petitioner, Cassie [L.]. This order further referred the case to mediation with the goals to work toward increased access rights and possible restoration of custody to the respondents upon them changing their circumstances that led to the removal of their child.

The respondents did not attend mediation and made no effort to change their circumstances to provide the possibility of a restoration of custody to them.

At the time of this hearing neither respondent had a job, a car, or a driver's license. Neither respondent had a residence, instead staying from time to time with various family members and friends.

Both respondents have had multiple criminal arrests and convictions, involving drugs, theft, and violation of probation. Both respondents have been in and out of jail, sometimes spending significant periods of time in jail. Respondent [Father] was recently released from the Roane County Jail after spending 155 days in jail for violation of probation.

Despite representing to the Court that they have both been employed from time to time, neither respondent has paid any child support for the benefit of their child in this matter either in the four months preceding the filing of this petition or at any other time.

The visitation exercised by the respondents with their child has been sporadic and token.

The investigation performed by CASA showed that the respondents failed to participate in that investigation and showed no indication that there would be any change in their behavior that would make it appropriate for them to provide care for their child. This investigation further showed that the petitioners were providing this child with what he needs to thrive and that it was in the best interests of this child that the parental rights of the respondents be terminated.

It is the desire of the petitioners to adopt this child. The petitioners have provided this child with food, shelter, medical care and love that he has not received from the respondents. The petitioners further have the ability financially to provide for the support of this child, family support to assist them in raising this child, and a proper home in which for him to be reared. The petitioners have expressed their unqualified love and devotion to this child and their desire to act as his parents.

(Paragraph numbering omitted.) The court then stated the following pertinent conclusion of law:

Best Interests: The Court finds by clear and convincing evidence that the termination of parental rights of the respondents is in the best interests of their child. In particular, the Court finds by clear and convincing evidence that the respondents have given no indication of any willingness, ability or desire to change their conduct or the circumstances that led to this child being removed from their custody by this Court. Further the Court finds by clear and convincing evidence that the petitioners intend to adopt this child and can provide this child with the proper care and support that he needs to grow into a happy and healthy person.

The trial court therefore concluded by clear and convincing evidence that it was in the Child's best interest to terminate Father's parental rights. We agree with this conclusion.

In support of his argument that the trial court erred by finding that the best interest factors weighed against maintaining his parental rights, Father emphasizes his testimony at trial that he had obtained employment set to begin in two weeks, had begun residing in his mother's home, and had participated in some visitation with the Child. We have concluded that the evidence was insufficient to merit a finding that Father's visitation with the Child during the statutorily determinative period was token. *See* Tenn. Code Ann. § 36-1-113(i)(3). However, in addition to the visitation factor, the trial court's findings indicate that it weighed the following factors against preserving Father's parental rights: (1) failure to make adjustment of circumstance, conduct, or conditions as to make it safe and in the Child's best interest to be in Father's home; (5) negative effect a change of caretakers and physical environment is likely to have on the Child's emotional, psychological, and medical condition; (7) criminal activity and use of controlled substances by Father; (8) Father's mental status in terms of his drug addiction that would prevent him from effectively providing safe and stable care and supervision; and (9) failure to pay child support. *See* Tenn. Code Ann. § 36-1-113(i).

The trial court also considered testimony and a report presented by a Court Appointed Special Advocate ("CASA") volunteer, who had investigated the Petitioners' home, interviewed the Petitioners and the Child, and attempted to interview Father. The volunteer testified that although Father had been courteous to him following a court hearing, he had been unable to reach Father outside of court despite several attempts. The CASA volunteer opined that the Child was flourishing in the Petitioners' home and that the Child's best interest would be served by terminating both parents' rights to the Child and facilitating adoption by the Petitioners. We have previously concluded that the evidence does not preponderate against the trial court's finding that Father abandoned the Child by willfully failing to support him. Although we determine that in the four months preceding his June 2013 incarceration, Father maintained at least minimal visitation with the Child, we nonetheless determine that the evidence does not preponderate against the trial court's findings as to the other statutory best interest factors upon which the court made findings.

Furthermore, our review of the record reveals that the remaining statutory factors applicable to this action do not weigh in favor of maintaining Father's parental rights. *See* Tenn. R. App. P. 13(c) (noting that this Court "may consider those facts established by the evidence in the trial court and set forth in the record . . . ."); *see In re Dominique L.H.*, 393 S.W.3d 710, 716 (Tenn. Ct. App. 2012) ("We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights."); *White*, 171 S.W.3d at 194 (taking notice of the appellate record in affirming the trial court's best interest finding). The trial court did not directly address in its judgment the relationship between Father and the Child or concerns expressed during trial regarding the Child's health when in Father's care.

The record also cannot be said to weigh in favor of Father regarding the following factors: (4) lack of a meaningful relationship between Father and the Child and (6) neglect shown toward the Child when in Father's care. *See* Tenn. Code Ann. § 36-1-113(i). As the trial court noted, the Child had not resided with Father since Mother and the Child began to live with the Petitioners in July 2012 when the Child was eleven months old. Between July 2012 and trial in December 2013, Father was incarcerated for a total of 235 days, or close to eight months out of the seventeen months the Child had resided with the Petitioners. Although Father made an effort to visit the Child during the months Father was not incarcerated, the evidence concerning whether Father had maintained a meaningful relationship with the Child is neutral at best. *See* Tenn. Code Ann. § 36-1-113(i)(4).

20

Moreover, as to concerns regarding Father's neglect of the Child's health, Cassie L. testified that the Child suffered from breathing problems requiring some breathing treatments and the use of an inhaler. Despite these concerns, Father did not refute Cassie L.'s testimony that he had continued to smoke cigarettes in the presence of the Child. In addition, undisputed testimony indicated that the Child had suffered cigarette burns on at least two occasions while an infant in his parents' care. *See* Tenn. Code Ann. § 36-1-113(i)(6). We conclude that the record sufficiently supports the trial court's finding by clear and convincing evidence that termination of Father's parental rights was in the Child's best interest.

## VI. Conclusion

The decision of the trial court is affirmed in part and reversed in part. We reverse the trial court's findings upon the statutory grounds of abandonment through failure to visit and failure to provide a suitable home, as well as upon the statutory ground of persistence of conditions leading to the Child's removal. We affirm the trial court's judgment in all other respects, including the termination of Father's parental rights to the Child upon the statutory ground of abandonment through failure to support the Child. Costs on appeal are assessed equally to the appellant, Jayson T., and the appellees, Cassie L. and James L. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment terminating parental rights and collection of costs assessed below.


_____
THOMAS R. FRIERSON, II, JUDGE


21