IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2019 Session

## TAMMY COMBS, ET AL. v. LESLIE MILLIGAN, M.D., ET AL.

**Appeal from the Circuit Court for Jefferson County**
**No. 24-334-III        Rex H. Ogle, Judge**

_____

**No. E2019-00485-COA-R3-CV**

_____

This appeal concerns healthcare liability. A husband and wife filed an action against six medical care providers alleging negligence in the medical treatment of the wife. The defendants moved to dismiss the suit on the basis of noncompliance with Tennessee Code Annotated section 29-26-121(a)(2)(E), which requires that pre-suit notice include a HIPAA[1] compliant medical authorization allowing a healthcare provider receiving a notice to obtain complete medical records from every other provider that is sent a notice. The plaintiffs' authorization allowed each provider to disclose complete medical records to each named provider but did not state specifically that each provider could obtain records from each other. The trial court held that the authorization failed to substantially comply with the statute's requirements. The plaintiffs appealed. We hold that Plaintiffs' method of permitting Defendants access to Mrs. Combs's medical records substantially complied with Tennessee Code Annotated section 29-26-121(a)(2)E). We reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, C.J., joined.

Steven W. Terry, Morristown, Tennessee, for the appellants, Tammy Combs and Michael Combs.

Edward G. White, Wayne A. Kline, and Lyndsey L. Lee, Knoxville, Tennessee, for the

_____

[1]HIPAA refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936.

appellee, Leslie Milligan, M.D.

Mark A. Castleberry, Knoxville, Tennessee, for the appellee, Hyun Ah Kim, M.D.

## OPINION

## I. BACKGROUND

On January 2, 2014, Tammy Combs was hospitalized at Jefferson Memorial Hospital ("Hospital") for pancreatitis. Four days later, a port was surgically inserted into Mrs. Combs by Leslie W. Milligan, M.D. Later that month, Mrs. Combs was advised by her family physician that her port site could potentially be infected. He prescribed an antibiotic and instructed Mrs. Combs to schedule an appointment with Dr. Milligan, the doctor who had inserted the port. The following day, Mrs. Combs was examined by Dr. Milligan. He flushed the port, told Mrs. Combs to finish the course of the antibiotic, and to return to his office the following week. On January 27, 2014, Mrs. Combs returned to see Dr. Milligan, who informed her that the port site looked good.

Mrs. Combs's condition worsened. On February 12, 2014, she went to the emergency room at Hospital and was examined for possible pneumonia and pleurisy. Testing revealed an elevated white blood cell count; a CT scan indicated a "filling defect" around the distal tip of the catheter on the port. On March 1, 2014, Mrs. Combs experienced vomiting and severe pain in her back. The next day, she was brought to the emergency room at Hospital via ambulance and was admitted. Her care was overseen by Hyun Ah Kim, M.D. On March 3, 2014, Dr. Kim ordered an MRI of Mrs. Combs's back, which revealed a bulging disc. Although she was released on March 4, 2014, Mrs. Combs returned the following day to the emergency room because of bladder issues.

By March 14, 2014, Mrs. Combs's condition had deteriorated to the point that she could not get out of bed. Her family physician made a home visit and arranged for an MRI to rule out osteomyelitis, a rare bone infection, generally found in the legs, arms, or spine. After receiving the MRI on March 16, 2014, Mrs. Combs was promptly sent to University of Tennessee Medical Center, where a diagnosis of osteomyelitis of the spine was confirmed. The source of the infection at the port site was determined to be the originating cause of the osteomyelitis. Mrs. Combs incurred permanent injuries to her spine and bladder.

On January 22, 2015, notice of potential healthcare liability was sent to eight medical care providers as per Tennessee Code Annotated section 29-26-121(a)(1). As noted in *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547 (Tenn. 2013),

Tenn. Code Ann. § 29-26-121(a)(1) contains an express notice requirement that requires plaintiffs to give defendants written notice that a potential healthcare liability claim may be forthcoming. In contrast, Tenn. Code Ann. §§ 29-26-121(a)(2)(A)-(C) facilitate early resolution of healthcare liability claims by requiring plaintiffs to advise defendants who the plaintiff is, how to reach him or her, and how to contact his or her attorney. Lastly, the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E) serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records.

The plain language of Tenn. Code Ann. § 29-26-121(a)(2) provides that each of the aforementioned requirements "shall" be included in a plaintiff's written notice to potential defendants. . . .

*Id.* at 554. The pre-suit notice packet included a letter accompanying the medical authorization stating, in part, as follows:

Attached please find a list of providers to whom a substantially similar notice is being sent pursuant to T.C.A. 29-26-121(a). [A list of providers followed.] As required by T.C.A. § 29-26-121(a)(2)(E), Tammy D. Combs has executed a HIPAA-compliant medical authorization authorizing you to obtain complete medical records from [same list of providers]."

(Emphasis added). An affidavit provided in the packet also noted that the authorization permitted the provider "to obtain complete medical records" from the other providers that received notice.

On May 21, 2015, a complaint was filed by Mrs. Combs and her husband, Michael Combs (collectively, "Plaintiffs"), naming Dr. Milligan; Jacob Paul Barbee, M.D.; Strant Thompson Colwell, M.D.; Southeastern Emergency Physicians, LLC, ("SEP"); Dr. Kim; and Hospital (collectively, "Defendants") as defendants. The complaint was filed within the 120-day extension to the statute of limitations provided by Tennessee Code Annotated section 29-26-121(c) ("When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider.").

Dr. Barbee, Dr. Milligan, SEP, Dr. Kim, and Hospital filed motions to dismiss asserting Plaintiffs' failure to comply with the requirements regarding the medical authorization as stated in Tennessee Code Annotated section 29-26-121(a)(2)(E). Dr. Colwell did not file a motion to dismiss but agreed that the disposition of the other

motions would be binding on him as well. In the motions to dismiss, Defendants argued that the release did not authorize them to obtain or use the medical records of any of the other noticed providers. Instead, they asserted that the authorization authorized each provider only to disclose and use his own records.

Plaintiffs responded that the authorization included in the pre-suit notice packet allowed each provider to share Mrs. Combs's medical records with every other provider that received a notice. Specifically, they contended that Paragraph 5 of each authorization stated, "[t]his information may be disclosed to and used by the following individual or organization for the purpose of a legal matter" and listed all the medical providers receiving a notice. They argued that had Defendants attempted to obtain records, no provider would have been permitted to withhold the records based on the authorization. According to Plaintiffs, Defendants are complaining because the word "disclose" was used instead of the word "obtain." They asserted that Defendants did not even attempt to obtain records before seeking to dismiss the complaint.

The motions to dismiss were heard together on December 1, 2015, and the trial court orally granted a dismissal as to **all** Defendants. An order ("First Order") granting these motions as to all Defendants was signed on January 13, 2016, and entered on January 19, 2016.

On or about December 28, 2015, prior to the entry of First Order, counsel for SEP, Dr. Barbee, and Dr. Colwell notified the court and all parties that a third-party claims administrator[2] had obtained a separate authorization from Mrs. Combs and had obtained the medical records on behalf of these three defendants. On February 17, 2016, Plaintiffs filed a motion to alter or amend the order of dismissal as to SEP, Dr. Barbee, and Dr. Colwell only. Plaintiffs sought no relief from First Order as to Dr. Milligan, Dr. Kim, or Hospital. On July 14, 2016, an agreed order ("Second Order") was entered by the trial court setting aside First Order as to SEP, Dr. Barbee, and Dr. Colwell only. Second Order made no mention of Dr. Milligan, Dr. Kim, or Hospital and did not address First Order's dismissal of them.[3] Second Order specifically noted:

> [I]t is hereby ORDERED that the Court's Order filed on January 19, 2016 that dismissed Defendants Jacob Paul Barbee, M.D., Strant Thompson Colwell, M.D., and Southeastern Emergency Physicians, LLC is hereby set aside as to these Defendants and this cause shall proceed against these Defendants.

On August 12, 2016, within 30 days of Second Order, Plaintiffs moved the trial court for

---

[2]Western Litigation Services, Inc. ("Western"), the third-party claims administrator, obtained the medical records on behalf of SEP, Dr. Barbee, and Dr. Colwell.

[3]Their names did remain as defendants in the caption.

- 4 -

permission to seek interlocutory review of First Order in an attempt to retain Dr. Milligan, Dr. Kim, and Hospital as parties in the action.

Defendants dismissed in First Order (Dr. Milligan, Dr. Kim, and Hospital) argued that it was the final order as to them. They asserted that they were dismissed in January 2016, and were not involved in the events that occurred thereafter. According to Defendants, Plaintiffs did not indicate any challenge to the initial final ruling relating to them. They contended:

> We got dismissed out of this lawsuit by virtue of an order entered last January, and [Plaintiffs' counsel] never took either a Rule 3 or a Rule 9 action to appeal that ruling until he filed this motion in August. . . . He didn't seek relief from your dispositive ruling order as to our three Defendants until eight months later.

Plaintiffs maintained that First Order was not a final order because they had filed a motion to alter or amend within 30 days of First Order and had no right to request an interlocutory appeal at that time. They asserted that within 30 days of Second Order, they timely filed the motion for an interlocutory appeal on the authorization issue as to Dr. Milligan, Dr. Kim, and Hospital. Plaintiffs acknowledged that the amended order "does not reinstate the claims against Defendants Leslie Milligan, M.D. [and] Hyun Ah Kim, M.D." The trial court denied Plaintiffs' motion, ruling that "First Order previously entered" was "the final judgment" as to the dismissal because it "decide[d] all issues between all the parties in question" and "the time to pursue an interlocutory appeal ha[d] long passed[.]"

Ultimately, SEP, Dr. Barbee, and Dr. Colwell moved for summary judgment. On February 19, 2019, more than three years after the entry of First Order, the trial court granted their dispositive motion ("Third Order"). Plaintiffs filed a notice of appeal as to all Defendants on March 15, 2019, "appeal[ing] the final judgment of the [trial court] filed on February 19, 2019[,]" but making no mention of First Order. Like Second Order, Third Order made no mention of Defendants now before us.[4]

On April 1, 2019, Plaintiffs moved to voluntarily dismiss SEP, Dr. Barbee, and Dr. Colwell, and an order dismissing these parties was entered on April 11, 2019. Shortly thereafter, on April 25, 2019, Dr. Milligan submitted a motion to dismiss the appeal asserting this court's lack of jurisdiction. Dr. Kim and Hospital filed notices joining Dr. Milligan's motion to dismiss on May 5 and May 7, 2019, respectively. On May 16, 2019, we denied the motion to dismiss "without prejudice to the appellees' ability to raise the jurisdictional issue discussed in the motion in their responsive briefs." On June 25, 2019, Plaintiffs filed a motion to voluntarily dismiss Hospital, which was

---

[4]The caption of the order did not list Drs. Milligan or Kim.

- 5 -

granted, leaving Dr. Milligan and Dr. Kim as Defendants in this timely filed appeal.

## II. ISSUES

We restate the issues raised in this appeal by Plaintiffs as follows:

1.      Whether Plaintiffs failed to substantially comply with the requirements of Tennessee Code Annotated section 29-26-121(a)(2)(E), which requires the provision to Defendants of a HIPAA compliant medical authorization permitting each medical provider the ability to obtain the medical records from other medical providers receiving a notice.

2.      Whether the trial court erred in dismissing Plaintiffs' complaint for failure to provide a compliant medical authorization despite not finding prejudice to Defendants.

Defendants raised the following issue:

3.      Whether this court lacks jurisdiction to hear Plaintiffs' appeal because the notice of appeal was not timely filed.

## III. STANDARD OF REVIEW

"The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 . . . is to file a Tennessee Rule of Procedure 12.02 motion to dismiss." *Phillips v. Casey*, No. E2014–01563–COA–R9–CV, 2015 WL 4454781, at \*2 (Tenn. Ct. App. July 21, 2015) (citing *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012)). Our Supreme Court has provided the following guidance regarding healthcare liability actions:

> In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance. If the defendant prevails and

- 6 -

the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13. If the plaintiff prevails, the defendant may pursue an interlocutory appeal under either Tennessee Rule of Appellate Procedure 9 or 10 using the same standards.

*Myers*, 382 S.W.3d at 307.

Reviewing a lower court's decision on a motion to dismiss is a question of law which this court must review de novo, with no presumption of correctness. *Myers*, 382 S.W.3d at 307 (citing *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010)). Additionally, statutory construction is a question of law that is reviewed de novo without any presumption of correctness. *Id.* (citing *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009)).

## IV. DISCUSSION

### Jurisdiction

First, let us address the issue concerning our jurisdiction to hear this appeal. Defendants assert that we lack jurisdiction to hear the appeal because Plaintiffs waited too long after the entry of First Order dismissing these doctors to file their notice of appeal. They further contend that the issues raised by Plaintiffs are settled law.

Rule 54.02 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Plaintiffs timely filed a motion to alter or amend First Order, which granted a dismissal as to all Defendants. Second Order set aside First Order with respect to SEP, Dr. Barbee, and Dr. Colwell only. However, the trial court did not certify either First

Order or Second Order as final pursuant to Rule 54.02. The fact that some claims against some parties remained unresolved meant that there was no final judgment. Neither First Order as amended nor Second Order was a final order. It was only Third Order than resolved all the remaining claims against all the remaining parties. Thus, Third Order was the true final judgment in this case, and Plaintiffs timely appealed from it. Consequently, we have jurisdiction to hear this appeal.

## Authorization

Tennessee Code Annotated section 29-26-121(a)(2)(E) provides that a plaintiff's pre-suit notice shall include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." *Id.* In *Stevens*, the Tennessee Supreme Court related:

> Tenn. Code Ann. § 29-26-121(a)(2)(E) serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records. Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records.

418 S.W.3d at 555. The Court observed that "Tenn. Code Ann. § 29-26-121(a)(2)(E) serve[s] an investigatory function." *Id.* at 554.

The Code of Federal Regulations provides that "a covered entity may not use or disclose protected health information without an authorization that is valid under this section." 45 C.F.R. § 164.508(a)(1). A valid HIPAA compliant authorization must contain at least the following six core elements:

> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
>
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
>
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
>
> (iv) A description of each purpose of the requested use or disclosure. The

statement "at the request of the individual" is a sufficient description of the purpose when an individual initiates the authorization and does not, or elects not to, provide a statement of the purpose.

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. The statement "end of the research study," "none," or similar language is sufficient if the authorization is for a use or disclosure of protected health information for research, including for the creation and maintenance of a research database or research repository.

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1). The provisions in the Code of Federal Regulations list five defects that make an authorization invalid:

(2) Defective authorizations. An authorization is not valid, if the document submitted has any of the following defects:

(i)     The expiration date has passed or the expiration event is known by the covered entity to have occurred;
(ii)     The authorization has not been filled out completely, with respect to an element described by paragraph (c) of this section, if applicable;
(iii)     The authorization is known by the covered entity to have been revoked;
(iv)     The authorization violates paragraph (b)(3) or (4) of this section, if applicable;
(v)     Any material information in the authorization is known by the covered entity to be false.

45 C.F.R. § 164.508(b)(2). Plaintiffs argue that because the authorization fulfilled all of the requirements of HIPAA, 45 C.F.R. § 164.508, it automatically satisfied the statutory requirements of section 29-26-121(a)(2)(E). Furthermore, Plaintiffs contend that because each provider was authorized to disclose to each other provider, the authorization does in fact permit the providers to obtain all medical records from each other provider receiving notice. They allege that the language is sufficient to allow any of the named parties to request Mrs. Combs's medical records from any of the other listed parties and to obtain the records. They contend that Tennessee Code Annotated section 29-26-121(a)(2)(E) does not require that the authorization be worded in any specific way. According to Plaintiffs, because the authorization does allow the providers to share records with each other, it is substantially compliant with Tennessee Code Annotated section 29-26-121(a)(2)(E). Additionally, Plaintiffs argue that Defendants knew "from the clear

language of the notice letter" that they could "request [] records from the other providers, each of whom received their own similar authorization" and "they would have received the records."[5]

Defendants respond in opposition that Plaintiffs have ignored the statutory language that requires not only "[a] HIPAA compliant medical authorization," but specifically requires that such authorization "permit[] the provider receiving the notice to obtain" the records from the other noticed providers. According to Defendants, the medical authorization only permitted them "to disclose" their own medical records to other providers. They argue that the authorization did not permit "the provider receiving the notice **to obtain** complete medical records from each other provider." Tenn. Code Ann. § 29-26-121(a)(2)(E) (emphasis added). Paragraph 2 identifies the provider "authorized to make the disclosure[.]" Paragraph 5 provides that the provider's records "may be disclosed to and used by" all of the noticed providers, including Dr. Milligan and Dr. Kim. However, nothing about paragraphs 2 or 5 authorized Dr. Milligan or Dr. Kim to obtain the records of any of the other noticed providers.

Defendants further observe that paragraph 8 of the authorization provided:

> 8. The medical provider IS NOT AUTHORIZED to discuss my medical care with the Requester herein. Further, the medical provider is not authorized to generate additional records or reports at the request of the Requester.

They claim that even if they had contacted the other noticed providers to determine whether they had received a similar authorization permitting them to obtain their records, those other providers would not have been permitted to discuss that information with them. They observe that providers "that wrongfully disclose or obtain private health information in violation of HIPAA may face fines of up to $50,000 per offense and/or imprisonment of up to one year." *Woodruff by and through Cockrell v. Walker*, 542 S.W.3d 486, 489 n. 9 (Tenn. Ct. App. 2017) (citing 42 U.S.C. § 1320d-6). "Because the penalties imposed on entities that wrongfully disclose or obtain private health information in violation of HIPAA are severe, the sufficiency of the plaintiffs' medical authorizations is imperative." *Id.* at 489.

Thus, Defendants argue that the authorization they received during the notice period did not equip them with the actual means to evaluate the substantive merits of Mrs. Combs's claim by enabling early access to her medical records. They assert that Plaintiffs, not Defendants, were responsible for complying with section 29-26-121, and that our state courts have specifically rejected Plaintiffs' argument that providers could

---

[5]Our Supreme Court designated the opinion on which Plaintiffs rely as "Not for Citation."

not have been prejudiced because they never attempted to obtain records with the allegedly deficient authorization.

Regarding noncompliance, our Supreme Court has stated:

A plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29–26–121(a)(2)(E) . . . should not derail a healthcare liability claim. Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records. Thus, we hold that a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

*Stevens*, 418 S.W.3d at 555. However, it remains "a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id.* (citing 45 C.F.R. § 164.508(a)(1)). This is "[b]ecause HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form." *Id.*

In its determination regarding whether a plaintiff has substantially complied with the requirement of Tennessee Code Annotated section 29-26-121(a)(2)(E), "a reviewing court should consider the extent and significance of plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id.* at 556. Plaintiffs claim that Defendants have not established any prejudice.

Plaintiffs argue that Defendants did not attempt to use the authorization. They maintain that the medical providers could have obtained the patient's medical records from each other simply by requesting them because the listed medical providers were informed in the written notice that all they had to do was ask the other listed medical providers for the records because HIPAA authorizations had been furnished to the other providers allowing them to disclose Mrs. Combs's records.

The trial court did not specifically find that Plaintiffs' authorization failed to strictly or substantially comply or prejudiced Defendants. The trial court ruled as follows:

[T]he Court very regrettably has to say that the notice does not meet the statutory requirements. And I think under the policy of this statute and even under the Supreme Court—or—the Appellate Court's ruling, and in particular the State Supreme Court's ruling, the Court must regretfully dismiss it. And I hate to do that and I – you know, I truly do, but it is what it is.

The issue of prejudice; I guess the prejudice aspect of it is the closest for

- 11 -

me if you will. In one sense I don't ultimately see how, how the defendants in my view of it-not necessarily what the Appellate Courts say, I have to follow what they say. But other than getting sued, I don't know how they're prejudiced . . . . But—but I think that this statute was passed to avoid that. And I guess the legislature is of the opinion that for them to have to face a lawsuit, period, is prejudice to, to a doctor or a medical provider. Gosh, low be of us to interfere with that or make them have to face the music like everybody else. But, having said that, that's the ruling of the court.

As noted by Plaintiffs, it is not completely clear from the transcript of the hearing as to what grounds the complaint was dismissed. Plaintiffs contend that it is not clear why the trial court believed the authorization was insufficient. They note that the holding did not address strict versus substantial compliance or indicate which standard the court was applying. Plaintiffs stress that the trial court found no prejudice to Defendants and that Defendants cannot show any manner in which they were prejudiced.

Tennessee Code Annotated section 29-26-121(a)(2)(E) requires that a healthcare liability plaintiff provide a HIPAA compliant medical authorization permitting each provider receiving the notice to obtain complete medical records from each other. If, as here, an authorization permits a defendant to obtain medical records in actual fact but simply does not include the word "obtain," it is still compliant. Here, the authorizations allowed each provider to share Mrs. Combs's medical records with every other provider receiving a notice. Had Dr. Milligan and Dr. Kim requested records from the other providers, each of whom received their own similar authorization, they would have received the records. Here, substantial compliance with the statute exists because Dr. Milligan and Dr. Kim could get all of Mrs. Combs's medical records from the other medical providers. To obtain the records, all they had to do was ask. While their decision not to ask is understandable as a tactical matter, Dr. Milligan and Dr. Kim were not prejudiced in the least by Plaintiffs' authorization.

We hold that Plaintiffs substantially complied with Tennessee Code Annotated section 29-26-121(a)(2)(E). We reverse the judgment of the trial court dismissing the complaint and remand for this matter to proceed.

## V. CONCLUSION

The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion. The costs on appeal are assessed against Appellees, Leslie Milligan, M.D., and Hyun Ah Kim, M.D.

_____
JOHN W. MCCLARTY, JUDGE